The **TRAVELERS INSURANCE COMPA-NY** and the Travelers Indemnity Company, Appellees,

v.

The **EMPLOYERS' LIABILITY ASSUR-ANCE CORPORATION, Ltd.,** Appellant.

No. 10474.

United States Court of Appeals Fourth Circuit.

Argued June 24, 1966.

Decided Sept. 21, 1966.

Thomas G. Andrew, Baltimore, Md. (Rollins, Smalkin, Weston & Andrew, Baltimore, Md., on the brief), for appellant.

Mathias J. DeVito, Baltimore, Md. (Joseph H. Young, and Piper & Marbury, Baltimore, Md., on the brief), for appellees.

Before SOBELOFF and J. SPENCER BELL, Circuit Judges, and LEWIS, District Judge.

SOBELOFF, Circuit Judge:

This controversy between two insurers is here because of the singular fascination the federal diversity forum holds for insurance companies, even when the controlling state law question has not been clearly settled and only a state court can give an authoritative answer.

The Travelers Insurance Company and The Travelers Indemnity Company (Travelers) instituted an action against The Employers' Liability Assurance Corporation, Ltd., (Employers) to recover the sum paid by Travelers in settlement of a personal injury suit brought by Luther E. Yates against Hess, Inc., Travelers' insured, and to recover the expenses incurred in conducting the defense of that suit. Travelers had issued a comprehensive liability policy to Hess, a distributor of petroleum products operating a plant in Baltimore City, and Employers had issued an automobile liability policy to Stewart Petroleum Company, a customer of Hess. Yates was an employee of Stewart and operator of a tank truck covered by Employers' policy.

The facts found by the District Court, and not in dispute, are as follows:

"On February 15, 1960 Yates brought a Stewart truck to the Hess facility for loading. The truck was divided into three separate tanks, each of which is filled by an opening in the top. Oil is pumped into the top through a spiller or spout. The flow of oil is controlled by a loading valve operated by a manual lever. The manual lever is activated by pulling an attached wire cord. On the crucial date, after filling the first of three tanks, Yates climbed on top of the Stewart truck for the purpose of starting to fill the second one. He put the spout into the second tank and started to pull the wire cord connected to the manual lever when the wire, which was defective, snapped, thus causing him to fall backwards off the truck and suffer serious personal injuries. The spiller, loading valve, manual lever and attached wire cord are all devices owned and maintained by Hess and furnished by Hess to Yates for use in filling the Stewart truck." 242 F.Supp. 627, 628 (D.Md. 1965).

When Yates brought his suit against Hess in a state court, Hess looked to Travelers for protection under its policy. That insurer, in turn, called upon Employers to defend the suit, but the latter declined to recognize Hess as an assured under the automobile policy it had issued to Stewart. Travelers thereupon undertook to conduct the defense for Hess, ultimately settled the suit for $105,000, and paid Yates its policy limit of $100,000. To obtain reimbursement, Travelers initiated the present action against Employers, based on the contention that liability under the comprehensive policy issued to Hess is secondary, and that Employers' liability is primary under the omnibus clause of the automobile liability policy the latter issued to Stewart.[1] Travelers' theory is that Employers' omnibus clause covers anyone using the truck with permission for loading or unloading.[2]

Employers conceded in the District Court, and did not argue to the contrary on appeal, that if its policy covered Hess its coverage would be primary to the coverage afforded Hess under the Travelers policy, and this was the District

---

[1] "Insuring Agreements"
I. Coverage A—Bodily Injury Liability —Automobile
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile."
*  *  *  *  *
"III. Definition of 'Insured.' The unqualified word 'insured' includes the named insured and also includes * * * (2) under Coverages A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *."

[2] "3. Definitions
*  *  *  *  *
(f) Purposes of Use. * * * Use of an automobile includes the loading and unloading thereof."

Court's legal conclusion. There is no contest over the amount claimed.

While Hess' liability arose out of the negligent maintenance and use of equipment essential to the loading process, the District Court treated the vehicle as one used by Hess even though Yates was not its employee, but Stewart's. The court, not having the guidance of any authoritative decision of the Maryland Court of Appeals as to the law of that state, relied upon two decisions of the District Court itself which had held that where "use" is defined by the policy to include "loading and unloading" liability is not restricted to those situations in which movement of the vehicle is involved.[3] We agree with the court's reasoning. Not only did Yates' injury occur, in point of time, during the loading of the truck but the particular use being made of the truck was necessary to carry out the loading. Yates was acting with the consent of Hess, performing an act essential to the delivery of the oil and the loading of the truck. It is immaterial that Hess' negligent maintenance did not begin at the moment of the accident; it is sufficent that the negligence became operative when the defective wire cord connected to the manual lever snapped in the loading operation. It is not uncommon for negligent maintenance to remain latent till activated by use of a defective article. The accident stems from the joint operation of two factors, the defect in the equipment and the use of the truck. The two are inextricably intertwined, and the fact that the harm arose out of the one does not negate its having arisen out of the other as well. The requirements, both as to time and as to causal relation, are satisfied.

In Pepsi-Cola Company of Charleston v. Indemnity Ins. Co., 318 F.2d 714 (4th Cir. 1963), this court held that there was coverage under a similar policy provision. The insurer of a gasoline truck was held primarily liable for injuries connected with its unloading, although there too the injuries were occasioned by the negligence of an assured covered by a public liability policy. As in the present case, the essential point was that the accident arose out of and in the course of a use of an insured truck as defined in the policy.

We would be disposed to affirm on the District Court's opinion[4] without more, but at the hearing of the appeal Employers called attention to a case decided by the Maryland Court of Appeals after the District Court's decision in the instant case, United States F. & G. Company v. Backus, Md., 220 A.2d 139 (June 8, 1966). We find nothing in that case, however, that militates against the District Court's holding. The Maryland court, on its reading of the facts in *Backus*, held that the automobile policy did not provide coverage, that the alleged tortfeasor (a cement dealer) had completed delivery and was not engaged in loading or unloading at the time of the accident. In this view it would follow that there was no causal relationship between the use and unloading of the vehicle and the injuries inflicted. This is not the situation before us, where the accident occurred in the very process of loading. We do not understand the Maryland Court of Appeals in *Backus* to have restricted the interpretation of the word "use" as defined in the policy, which explicitly includes "loading and unloading." Indeed, the Maryland court cites, without caveat, Judge Thomsen's opinion in American Auto. Ins. Co. v. Master Bldg. Supply & Lbr. Co., 179 F.Supp. 699 (D.Md.1959), relied on by the District Court in the case now under review. It merely distinguished the cases on their facts. In *American Auto,* the insured automobile delivered a load of sheetrock to the customer's premises. Some four hours later a person was injured by the fall of one sheet which had been set down with one edge on the floor

3. American Auto. Ins. Co. v. Master Bldg. Supply & Lbr. Co., 179 F.Supp. 699 (D. Md.1959) (Thomsen, C. J.) ; Employers' Liability Assur. Corp. v. Indemnity Ins. Co., 228 F.Supp. 896 (D.Md.1964) (Winter, J.).

4. 242 F.Supp. 627 (D.Md.1965).

and another leaning against a storage closet. Judge Thomsen found coverage after giving a broad interpretation to the terms "use," "loading" and "arising out of" appearing in the insuring provision of the policy. He reviewed the competing doctrines evolved in other jurisdictions in the construction of these terms—some favoring a narrow construction and others, more numerous, extending broader coverage to the "complete operation." He expressed the opinion that the Maryland courts would apply the more liberal rule in such a case as was then before him. We are of the same opinion in the present instance.

Nor do we think Employers is justified in its reliance on Great American Ins. Co. v. General Accident Fire and Life Assur. Corp., 321 F.2d 948 (5th Cir. 1963). In that case a power company engaged an independent contractor to transplant a coconut palm tree. The contractor supplied its own truck and the men to do the work. When the tree was hoisted onto the truck its fronds came in contact with the power company's overhead wires, causing severe injury to an employee of the contractor. So far as the interpretation of the word "use" is concerned, the Fifth Circuit, speaking through Judge John R. Brown, was emphatic in emphasizing that "there can be no real question about the vehicle being 'used.'"

The controlling issue in that case, however, was whether the "use" could be attributed to the power company so as to make it an assured within the meaning of the omnibus clause. On that issue, the court found that the power company was in no way involved in the loading of the vehicle, and could not therefore be considered an omnibus assured. In our case, however, Hess was intimately involved in the loading operation itself. It maintained the facility

in contemplation of its regular use in the manner in which Yates used it in conjunction with the loading of its products in customers' vehicles. The operation of the lever was part of the use of the truck in loading. As this entire operation was with the permission of the named insured, the policy covers such use.[5]

Affirmed.

---

5. Two other recent cases strongly support the District Court's conclusion. See Cinq-Mars v. Travelers Ins. Co., 218 A.2d 467 (R.I. Apr. 7, 1966); Drew Chemical Corp. v. American Fore Loyalty Group (Apr. 6, 1966) 90 N.J.Super. 582, 218 A. 2d 875. It is noteworthy that in the latter case the opinion of Judge Winter in Employers' Liability Assur. Corp. v. Indemnity Ins. Co., 228 F.Supp. 896 (see n. 3 and accompanying text, supra) is quoted with approval.