STEVE D. THOMPSON TRUCKING,
INC., Appellant,

v.

The STATE of Texas, et al., Appellees.

No. 14330.

Court of Appeals of Texas,
Austin.

Jan. 23, 1985.

Rehearing Denied Feb. 13, 1985.

Winkle & Wells, Dallas, Phyllis B. Schunck, Wood, Lucksinger & Epstein, Austin, for appellant.

Jim Mattox, Atty. Gen., Douglas B. Fraser, Asst. Atty. Gen., Mert Starnes, Robinson, Felts, Starnes, Angenend & Mashburn, Austin, for appellees.

Before SHANNON, C.J., and EARL W. SMITH and BRADY, JJ.

BRADY, Justice.

This is a suit by the State and several regulated motor carriers for declaratory and injunctive relief. The trial court found that appellant was operating as a motor carrier without having first obtained a certificate or permit from the Railroad Commission and without otherwise having complied with the regulatory requirements of the Texas Motor Carrier Act, Tex.Rev.Civ. Stat.Ann. art. 911b (1964). Appellant was permanently enjoined by the trial court from engaging in certain activities which the court held to constitute "motor carriage" as that term is defined by art. 911b. The sole question in this appeal is whether Thompson Trucking is a "motor carrier" subject to regulation by the Railroad Commission of Texas. We will reverse the

judgment of the trial court and order the injunction be dissolved.

Thompson Trucking maintains truck terminals in Dallas and Houston. Within those cities, the firm employs trucks to transport freight between its terminals and the terminals of the Southern Pacific Railroad, located within the two cities. The freight is then transported between Houston and Dallas by the Southern Pacific Railroad over its rail lines, not by motor trucks. Appellant's trucks do not travel between those cities. The trial court concluded that since the appellant utilized public streets and highways within Dallas and Houston, they were a "motor carrier." Motor carrier is defined by § 1(g) of art. 911b as follows:

> The term "motor carrier" means any person, firm, corporation, company, copartnership, association or joint stock association and their lessees, receivers, or trustees appointed by any court whatsoever owning, controlling, managing, operating, or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this state, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed.

■ The trial court determined that the holding in *State v. Acel Delivery Service, Inc.*, 388 S.W.2d 930 (Tex.1965) was controlling. Following this decision by the Texas Supreme Court, the Legislature at its next session amended § 1(g) to abrogate the Railroad Commission's jurisdiction over motor vehicle traffic between contiguous cities. Thus, one who transports property between two or more contiguous cities is not a motor carrier under the amended statute. The trial court's conclusion that "all intercity traffic was covered by the Act" under *Acel*, apparently including traffic between contiguous cities, is contrary to the express provisions of the amended article.

The 1965 amendment to § 1(g) authorized the Railroad Commission to prescribe "commercial zones" adjacent to, and commercially a part of, any specified incorporated municipality. Within these zones, operations as a motor carrier may be performed without a certificate or permit. The State and the regulated carriers contend that the 1965 amendment does not exempt services performed by Thompson Trucking. They argue that these services represent transportation *between,* and not strictly local service wholly within, the Dallas and Houston zone. Appellant cites several opinions of the Attorney General to support its argument.

Although opinions of the Attorney General of Texas are not binding, they may be helpful to the courts in the interpretation of statutory language in situations such as this. *Jones v. Williams,* 45 S.W.2d 130 (Tex.1931). In Tex.Att'y Gen.Op.No. M–1248 (1972), an unnamed certified motor carrier was transporting property between two cities where it had terminals and between which it was authorized to operate. This intercity transportation was regulated service between two or more non-contiguous cities which were not a part of any one commercial zone. The carrier recognized that the line-haul portion of its service was subject to regulation. However, the carrier desired to use smaller delivery trucks to pick up and deliver the freight throughout the commercial zones of the two cities without registering the smaller trucks. The Railroad Commission sought the opinion of the Attorney General who held that equipment operated entirely within the zone is not subject to regulation, "even though this equipment is employed in conjunction with the delivery of shipments which originated in the commercial zone but were destined to a point beyond the commercial zone as well as shipments moving in the opposite direction."

■ Thompson Trucking's pick-up and delivery service is performed by trucks operating exclusively within a commercial zone. Thompson Trucking is performing a local pick-up and delivery service for rail shipment at both ends of the line-haul, wholly within a commercial zone. None of

appellant's trucks move freight on the highway system between the Dallas and Houston commercial zones. To adopt the argument of the State that the appellant is subject to regulation "when it hits the first public streets that go between two incorporated cities" would be to place an unrealistic and overly broad interpretation on the statute. The State says:

In Dallas and Houston this basically occurs at the end of every shipper's driveway.

Admitted into evidence by the trial court was the Railroad Commission order on another permit application dated December 5, 1983. That order states that most railroad freight involving prior or subsequent movements by truck involves motor vehicle movements within commercial zones, and that the motor vehicle portions of the movement are not subject to Railroad Commission jurisdiction. We see no real difference between that type of operation and appellant's operations.

■ The State argues that Thompson Trucking violated the Commission's tariffs by failing to charge the over-the-road linehaul motor carrier rate between Dallas and Houston. However, Thompson Trucking does not make the line-haul. That service is furnished by the Southern Pacific Railroad. Use of rail service is not subject to regulation by the Railroad Commission. The statute regulates motor carriers' use of the public highways for private gain. The law was designed to protect the public by limiting traffic on the public highways. Section 22b of the Motor Carrier Act is a declaration of legislative policy:

The business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business affected with the public interest. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and that the various transportation agencies of the State may be adjusted and correlated so that public highways may serve the best interest of the general public.

When this Act was challenged as an unconstitutional infringement on the rights of persons to contract for transportation of property for hire, the United States Supreme Court upheld it as resting on the policy of highway conservation. *Stephenson v. Binford,* 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1935). The Supreme Court held that requiring truckers to charge high rates was rationally related to the highway conservation purposes stated by the Texas Legislature because "this provision, by precluding the contract carriers from rendering service at rates under those charged by the railroad carriers, has a definite tendency to relieve the highways by diverting traffic from them to the railroads."

Judgment of the trial court is reversed, and the injunction against appellant is dissolved.