**PHILLIPS PETROLEUM COMPANY, Plaintiff,**

v.

**BRAD & SONS CONSTRUCTION, INC., d/b/a Brad & Sons Welding and Construction Company, Defendant.**

No. 90–2237.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 13, 1993.

Robert E. Kelly, Jr., Phillips Petroleum Co., Houston, TX, for plaintiff.

Scott N. Morse and Craig Alan Morgan, Brown, Maroney & Oaks Harline, Austin, TX, for defendant.

*MEMORANDUM OPINION*

RAINEY, District Judge.

Pending before this Court are Defendant's Motion for Partial Summary Judgment Limiting Potential Liability to $300,000.00 (Docket Entry # 3) and Plaintiff's Motion for Partial Summary Judgment and Response to Defendant's Motion for Partial Summary Judgment Limiting Potential Liability to $300,000.00 (Dkt. # 5). In considering these motions, the Court has reviewed the entire record filed in this action, including all responses and replies pertaining to each motion for partial summary judgment. After such consideration, this Court is of the opinion that Defendant's Motion for Partial Summary Judgment should be DENIED and Plaintiff's Motion for Partial Summary Judgment should be GRANTED.

**I.**

*STATEMENT OF THE CASE*

A. BACKGROUND FACTS

In their respective motions, the parties have set forth in detail the facts giving rise to this cause of action, and this Court finds it unnecessary to reiterate this background information at the present time. For purposes of discussing the motions currently under consideration, the Court finds the following facts relevant:

Phillips Petroleum Company ("Plaintiff") brought this action against Brad & Sons Construction, Inc., d/b/a Brad & Sons Welding and Construction Company ("Defendant"), claiming a contractual right to indemnity pursuant to a contract executed between the parties on February 9, 1987, entitled Gulf Coast Region Service Agreement ("Service Agreement"). According to the terms of the Service Agreement, Defendant was "from time to time ... to perform work and/or provide items of equipment, machinery, materials or supplies in the conduct of [Plaintiff's] operations."[1] Defendant further agreed to:

---

1. *See* Service Agreement, Article 1, Exhibit C to Brief in Support of Defendant's Motion for Par-

"... defend, indemnify and hold harmless [Plaintiff] from any and all claims, judgments, losses, expenses, and any costs related thereto (included but not limited to Court costs and attorneys' fees) for damage to or loss or defect of [Defendant's] property and for personal injury to or debt of [Defendant's] employees ..."[2]

The Service Agreement required Defendant to so indemnify Plaintiff even if Plaintiff's liability resulted from its own negligence or from strict liability; however, Defendant was not obligated to indemnify Plaintiff to the extent that any claim or liability was caused by the gross negligence or willful misconduct of Plaintiff.[3]

In November of 1988, Plaintiff contacted Defendant to repair a leak in a pipeline located in a natural gas gathering field in Fayette County, Texas. Apparently, this work was to be performed pursuant to the Service Agreement. The leaking pipeline was connected to a pipeline system wherein natural gas is collected through a series of pipes increasing in size as they depart from the well site and approach the processing plant. The summary judgment evidence indicates that the leak being repaired by Defendant was about 800 feet from the nearest gas well and that the four wells connected to the leaking pipeline were producing gas.

During the repair of the pipeline, one of the Defendant's employees, Mr. Ronald Hentschel, was seriously injured. Mr. Hentschel and his wife filed suit against Plaintiff, and on May 10, 1989, Plaintiff settled that suit, paying Mr. Hentschel a sum of $4,300,-000.00.

In the present case, Plaintiff is seeking to recover that amount from Defendant based upon the indemnity provision in the Service Agreement. Specifically, Plaintiff is seeking actual damages for the amount paid to Hent-schel, pre-judgment and post-judgment interest, attorneys' fees and cost of Court.

## B. MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Defendant filed its Motion for Partial Summary Judgment (Dkt. # 3) on January 10, 1992.[4] For the purpose of its motion, Defendant presumes that the indemnity provision contained in the Service Agreement is enforceable and argues that the Texas Oilfield Indemnity Act, Tex.Civ.Prac. & Rem.Code Ann. § 127.001 et seq. (Vernon 1986) applies to, controls, and limits Plaintiff's contractual right to indemnity under the Service Agreement. In particular, Defendant argues that this statute, as a matter of law, limits Defendant's potential indemnity liability to $300,-000.00 and requests that this Court enter a partial summary judgment to that effect.

Plaintiff filed its Motion for Partial Summary Judgment (Dkt. # 5) on January 14, 1992, and argues that Defendant's reliance on the Texas Oilfield Indemnity Act is erroneous and unfounded. Instead, Plaintiff argues, it is Plaintiff who is entitled to a partial summary judgment either that (1) the Texas Oilfield Indemnity Act does not apply and thus does not limit Plaintiff's right to indemnity or, (2) that even if the Texas Oilfield Indemnity Act does apply, Plaintiff is not limited to $300,000.00 as claimed by Defendant, but rather to $500,000.00 as Defendant voluntarily provided that amount of insurance pursuant to the terms of the Service Agreement.[5]

## II.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

tial Summary Judgment Limiting Potential liability to $300,000.00 (Dkt. # 4).

**2.** *Id.* at Article 9(b)(ii).

**3.** *Id.* at Article 9(d).

**4.** Defendant filed two apparently identical motions for partial summary judgment and briefs in support thereof (Dkt. ## 3, 4, 6, and 7). The first motion was filed on January 10, 1992, and the second motion was filed on January 14, 1992. This Court will simply refer to "the" motion for partial summary judgment.

**5.** *See* Service Agreement, Article 10(a)(iii), Exhibit A to Plaintiff's Motion for Partial Summary Judgment (Dkt. # 5).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). The burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact. *See International Ass'n of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987). A defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case. *Id.*

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Assertions unsupported by facts are insufficient to oppose a motion for summary judgment. *Williams v. Weber Management Serv.,* 839 F.2d 1039, 1041 (5th Cir.1987). There must be evidence giving rise to reasonable inferences that support the nonmoving party's position. *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987). Bare or mere allegations are insufficient. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79 (5th Cir.1987).

In considering a motion for summary judgment, the district court must view the evi-

dence through the prism of the substantive evidentiary burden. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* 477 U.S. at 255, 106 S.Ct. at 2513. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir.1987).

### III.

### *ANALYSIS OF THE MOTIONS*

In support of their motions, each party has offered extensive arguments and a substantial amount of summary judgment evidence. In the interest of brevity and clarity, however, this Court declines to address and discuss at length each argument propounded by the parties and will instead set forth only the essential reasons behind its ruling.

The central issue to be decided by the Court at this time is whether the Texas Oilfield Indemnity Act (hereinafter "the Act") applies to the indemnity provisions contained in the Service Agreement in regard to the events giving rise to this cause of action. The Act makes void and unenforceable any provision in an agreement pertaining to a well for oil, gas or water or to a mine for a mineral if it purports to indemnify a person against loss or liability for damage caused by or resulting from the sole or concurrent negligence on the part of the indemnitee, his agent or employee, or an individual contractor directly responsible to the indemnitee.[6] There is no doubt that the indemnity provisions in this case do exactly that.

Excepted from the Act's prohibition, however, are indemnity agreements in which the parties to the agreement have consented in writing that the indemnity obligation will be supported by available liability insurance cov-

---

6. *See* Tex.Civ.Prac. & Rem.Code Ann. § 127.003    (Vernon 1986 & Supp.1993).

erage to be furnished by the indemnitor.[7] Prior to September 1989, the Act specified that an indemnitor's liability could not exceed twelve times the state's basic limits for bodily injury.[8] The Texas Board of Insurance Commissioners set the state's basic limits for personal injury at $25,000.00 [9]; therefore, an indemnitor's obligation would be limited to $300,000.00.

The Texas legislature amended the Act effective September 1, 1989, and changed, *inter alia,* the limits of the insurance liability coverage to be furnished by the indemnitor [10]. Section 4 of the 1989 amendatory act provides that the 1989 amendments will apply retroactively without regard to whether the indemnity obligation was entered into before or after the effective date of the amendments.[11]

It appears from the evidence submitted by the parties that the Service Agreement does contain the precise type of indemnity language contemplated by the Act. It further appears that the parties have agreed in writing that Defendant will maintain liability insurance to support its indemnity obligation. What is *not* apparent is that the Act is applicable to the services being performed by Defendant at the time of Mr. Hentschel's accident.

The Service Agreement applies very generally to work to be performed or equipment to be provided by Defendant from "time to time" as desired by Plaintiff. This agreement does not make reference to the Act. The parties did, however, enter into a supplemental agreement ("Supplemental Agreement") on August 13, 1986, which specifically addresses the applicability of the Act. The introductory language of the Supplemental Agreement provides as follows:

·Whereas, [Plaintiff] and [Defendant] wish to modify the [Service Agreement] insofar as *certain operations* are concerned;

Now, therefore, in consideration of the mutual promises contained herein, the parties agree to amend the [Service Agreement] with respect to every contract between the parties performed in areas where Texas law controls and *which involve services defined in V.T.C.A. Civil Practice and Remedies Code § 127.001 as follows* ...[12]

The Supplemental Agreement continues on to limit Defendant's indemnification obligation to "the extent of the coverages and dollar limits of insurance agreed to be furnished pursuant to Article 10 [of the Service Agreement]...." [13] That particular Article obligates Defendant to carry $500,000.00 in "general public liability insurance" [14]; however, the Supplemental Agreement further provides that:

[i]n no event shall said insurance be required in an amount in excess of twelve times the State of Texas basic limits for bodily injury approved by the Board of Insurance Commissioners in accordance with Article 5.15 of the Texas Insurance Code.[15]

As Defendant correctly points out, this language incorporates, nearly verbatim, the liability limitation contained in the original version of the Act; however, the provisions contained in the Supplemental Agreement

7. *Id.* at § 127.005.

8. *Id.*

9. *See* Texas Department of Insurance Commercial Lines Manual Division Six–General Liability, Rule 23(c), Exhibit E to Brief in Support of Defendant's Motion for Partial Summary Judgment Limiting Potential Liability to $300,000.00 (Dkt. # 4).

10. *See* Tex.Civ.Prac. & Rem.Code Ann. § 127.005 (Vernon Supp.1993).

11. *See* Tex.Civ.Prac. & Rem.Code Ann. § 127.005 historical note (Vernon Supp.1993) [Act of Sept. 1, 1989, 71st Leg., R.S., ch. 1102, § 4, 1989 Tex.Sess.Law Serv.]

12. *See* Supplemental Agreement, Exhibit D to Brief in Support of Defendant's Motion· for Partial Summary Judgment Limiting Potential Liability to $300,000.00 (Dkt. # 4) (emphasis added).

13. *Id.*

14. Service Agreement, Article 10(a)(iii), Exhibit A to Plaintiff's Motion for Partial Summary Judgment (Dkt. # 5).

15. *See* Supplemental Agreement, Exhibit D to Brief in Support of Defendant's Motion for Partial Summary Judgment Limiting Potential Liability to $300,000.00 (Dkt. # 4).

expressly apply *only* to work performed pursuant to the Service Agreement *"which involve services defined in V.T.C.A. Civil Practice and Remedies Code § 127.001"* (the Act).[16] It logically follows from this description that not all of the work to be performed pursuant to the Service Agreement necessarily involved services defined in the Act. Indeed, this language indicates that the parties did conceive that some of the work to be performed by Defendant might not fall within the bounds of the Act.

The Act governs indemnity provisions in "certain agreements" that pertain to "a well for oil, gas or water or to a mine for a mineral"[17]. Under the terms of the original version of the Act, § 127.001 defines the types of agreements and services that are included within the ambit of the Act as follows:

(1) "Agreement pertaining to a well for oil, gas, or water or to a mine for a mineral" means:

(A) a written or oral agreement or understanding concerning the rendering of well or mine services; or

(B) an agreement to perform a part of those services or an act collateral to those services, including furnishing or renting equipment, incidental transportation, or other goods and services furnished in connection with the services.

(2) "Well or mine service" includes:

(A) drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, or otherwise rendering services in connection with a well drilled to produce or dispose of oil, gas, other minerals or water; ...

(B) designing, excavating, constructing, improving, or otherwise rendering services in connection with a mine shaft, drift or other structure intended for uses in exploring for or producing a mineral.[18]

The Texas legislature amended the Act again in 1991, and these amendments include the addition of the following exclusionary provision within the definition of "well or mine services":

(B) does not include:

(i) purchasing, selling, gathering, storing, or transporting gas or natural gas liquids by pipeline or fixed associated facilities; or

(ii) construction, maintenance, or repair of oil, natural gas liquids, or gas pipelines or fixed associated facilities.[19]

Section 5 of the 1991 amendatory act provides that the amendment applies retroactively to obligations arising or resulting from well or mine services performed under any agreement and occurring on or after the effective date of the amended Act, regardless of when the agreement was made.[20]

In support of its claim that the Act applies to the present dispute, Defendant argues that the Service Agreement was an agreement to render well or mine services as defined in the Act. Specifically, Defendant claims that the services contemplated by the Service Agreement were services involving "repairing, improving, ... or otherwise rendering services in connection with a well drilled to produce or dispose of oil, gas, or other minerals or water." Defendant also argues that the services to be performed included "excavating, constructing, improving or otherwise rendering services in connection with a ... structure intended for use in ... producing a mineral." It is Defendant's contention that the services being performed at the time Mr. Hentschel was injured fall within these categories and thus prompt application of the Act.

After a careful reading of the Act, the Service Agreement and the Supplemental Agreement, this Court cannot agree with Defendant's contention. The Act obviously

---

**16.** *Id.* (emphasis added).

**17.** Tex.Civ.Prac. & Rem.Code Ann. § 127.002 (Vernon 1986 & Supp.1993).

**18.** *Id.* at § 127.001.

**19.** Tex.Civ.Prac. & Rem.Code Ann. § 127.001 (Vernon Supp.1993).

**20.** *See* Tex.Civ.Prac. & Rem.Code Ann. § 127.001 historical note (Vernon Supp.1993) [Act of April 19, 1991, 72nd Leg., R.S., ch. 36, § 5, 1991 Tex.Sess.Law Serv. 430, 431].

**796**

applies to those contracts for services involved in the drilling or servicing of *wells.* While there is no doubt that the coverage of the Act is broad, it is broad to the extent that it covers *well services* and activities relating to *well drilling or servicing.* There is no language contained within the Act that encompasses work done in connection with a *pipeline.* The Court finds support for this interpretation of the Act in the 1991 amendment to § 127.001 which expressly excludes repair of gas pipelines.

Because this Court finds that neither the original version of the Act nor the amended versions of the Act are applicable to the present case, this Court need not address whether this amendment should be applied retroactively; however, the Court is greatly impressed with the legislative intent manifested in the 1991 amendment and the decision to make that amendment retroactive. It is apparent that the Texas legislature intended to clarify its previous definition of "well or mine services" and emphasize that it did not include work performed on gas pipelines. In addition, neither party has identified a Texas case wherein the Act was applied to pipeline repair.

The fact that the Supplemental Agreement expressly identifies and includes *only* those services defined in the Act lends support to Plaintiff's contention that the Act is inapplicable. Obviously, Defendant cannot claim that the parties intended that every service performed pursuant to the Service Agreement would fall within the services defined in the Act. Otherwise there would have been no need for the distinction made in the Supplemental Agreement.

As mentioned, the indemnity claim at issue results from a natural gas explosion that injured one of Defendant's employees while he was repairing a pipe in a natural gas gathering field. Defendant places great emphasis on the fact that the leaking pipe under repair was located only several hundred yards from the nearest producing well and that gas was indeed being produced in the wells in the field. Defendant's reliance is misplaced. It is apparent from the actual language of the original Act and the clarification provided in the 1991 amendment that the Act was not intended to extend its application to the present situation.

## IV.

### *CONCLUSION*

In view of the foregoing, this Court finds that there is no meaningful dispute of any material fact as to the applicability of the Texas Oilfield Indemnity Act in the present case. Specifically, the Court finds that the Act does not apply to Plaintiff's contractual right to indemnity under the Service Agreement executed by the parties and, accordingly, Defendant's indemnity liability is not limited to a maximum of $300,000.00. In light of this finding, it is unnecessary to address the alternative claim for relief requested by Plaintiff in its Motion for Partial Summary Judgment.

It is therefore

ORDERED, ADJUDGED and DECREED that Defendant's Motion for Partial Summary Judgment Limiting Potential Liability to $300,000.00 (Dkt. # 3) is hereby DENIED. It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Dkt. # 5) is hereby GRANTED to the extent that the Texas Oilfield Indemnity Act does not apply to this action.

The Clerk will enter this Order and provide all parties with a true copy.