COASTAL TRANSPORT CO., Appellant,

v.

CROWN CENTRAL PETROLEUM CORP. and Liberty Mutual Insurance Co., Appellees.

Crown Central Petroleum Corp., Appellant,

v.

Transport Insurance Co., Appellee.

No. 14–99–00135–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 30, 2000.

Rehearing Overruled June 8, 2000.

Robert M. Greenberg, Robert E. Motsenbocker, Dallas, for appellant.

M. Michael Meyer, John L. Hagan, Robert Arredondo, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and LEE.*

## O P I N I O N

NORMAN LEE, Justice (Assigned).

This is a double appeal. In the first appeal, Crown Central Petroleum Corp. ("Crown") appeals the summary judgment entered in favor of Transport Insurance Co. ("Transport") and the denial of its own motion for summary judgment on Crown's claims that it was an additional insured under a policy issued by Transport to Coastal Transport Co. ("Coastal"), and, therefore, Transport owed Crown a defense in an underlying lawsuit. In the second appeal, Coastal appeals the summary judgments entered in favor of Crown and intervenor, Liberty Mutual Insurance Co. ("Liberty Mutual"), and the denial of

* Senior Justice Norman Lee sitting by assignment.

its own motion for summary judgment on Crown's claim that Coastal owed it indemnification for negligence claims asserted against Crown in the same underlying lawsuit. We affirm.

## I. Background

Crown, a refiner and marketer of petroleum products, owns and operates a loading terminal. Coastal is a trucking company. On September 28, 1993, a Coastal employee, Drexel Stewart, was loading gasoline into a trailer owned and operated by Coastal at Crown's loading terminal. The gasoline overflowed from the trailer and caught fire. The accident resulted in the subsequent filing of personal injury suits by Stewart and two others against Crown, Coastal, and others (the "Stewart lawsuits"). As to Crown, the Stewart plaintiffs alleged that Crown was negligent in the maintenance and repair of its equipment at its loading terminal. Crown eventually settled with the Stewart plaintiffs.

Crown sued Coastal's insurer, Transport, for failing to tender a defense in the Stewart lawsuits under an insurance policy issued to Coastal by Transport. Crown and Transport filed cross-motions for summary judgment on whether Crown was an insured under Coastal's policy and, if so, whether Transport owed Crown a defense in the Stewart lawsuits. The trial court granted Transport's motion for summary judgment, while denying Crown's motion for summary judgment, and entered judgment that Crown take nothing on its claims against Transport.

Crown also sued Coastal for failing to indemnify it against the claims asserted against Crown in the Stewart lawsuits and for failing to name it as an additional insured in the policy issued by Transport. Crown, Liberty Mutual,[1] and Coastal filed cross-motions for summary judgment on whether the indemnification provision contained in the Terminal Loading Agreement (the "Agreement") entered into between

Crown and Coastal was enforceable, and whether Coastal breached the insurance provision of the Agreement by failing to name Crown as an additional insured. The trial court granted Crown's and Liberty Mutual's motions for summary judgment, while denying Coastal's motion for summary judgment. The trial court entered judgment that Crown recover from Coastal $4,816,549.28 and that Liberty Mutual is subrogated to Crown's recovery in the amount of $1,924,416.43.

## II. Summary Judgment Standard of Review

To prevail on a motion for summary judgment, the defendant must establish that no material fact issue exists and it is entitled to judgment as a matter of law. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). Once the defendant establishes that no genuine issue of material fact exists regarding an element of the plaintiff's claim, the plaintiff must present competent summary judgment evidence raising a fact issue on that element. *See Guest v. Cochran,* 993 S.W.2d 397, 401 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In conducting this review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review all summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *See Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999).

## III. Crown v. Transport Insurance

Crown asserts it is an additional insured under Coastal's "Truckers Policy" issued by Transport. The interpretation of an insurance contract is governed by

---

1. Liberty Mutual was Crown's insurer.

general rules of contract interpretation. *See Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999). Our primary concern is to ascertain the true intentions of the parties as expressed in the written instrument. *See Lenape Resources Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 573 (Tex.1996). A written contract is not ambiguous if it is worded so that it can be given a definite or certain meaning. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). If the contract is susceptible to two or more interpretations, then the policy is ambiguous. *See id.* Here, neither party asserts ambiguity.

The policy issued by Transport Insurance provides:

**SECTION II–LIABILITY COVERAGE**

**A. COVERAGE**

We will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

We have the right and duty to defend any **suit** asking for these damages. However, we have no duty to defend **suits** for **bodily injury** or **property damage** not covered by this Coverage Form. We may investigate and settle any claim or suit as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit

of Insurance has been exhausted by payment of judgments or settlements.

**1. WHO IS AN INSURED**

The following are **insureds**:

\* \* \*

**b.** Anyone else while using with your permission a covered **auto** you own, hire or borrow except:

\* \* \*

(3) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered **auto**.

\* \* \*

**e.** Anyone liable for the conduct of an **insured** described above but only to the *extent of that liability.*

(emphasis in the original).

**A. Joint and Several Liability**

 Relying on the language, "anyone liable for the conduct of an insured," contained in § II.A.1.e of the policy, Crown first contends that it was an insured under the policy because it was potentially liable for Coastal's conduct. Because the Stewart plaintiffs alleged joint and several liability, Crown contends that under Tex. Civ. Prac. & Rem.Code Ann. § 33.013, it could have been liable, not only for its own percentage of negligence, but also for Coastal's conduct.[2]

---

2. Section 33.013 was amended in 1995. *See* Act of May 18, 1995, 74ᵗʰ Leg., ch. 136, § 1, 1995 Tex. Gen. Laws 974. The pre–1995 statute stated in relevant part:

(a) Except as provided in Subsections (b) and (c), a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed.

(b) Notwithstanding Subsection (a), each liable defendant is, in addition to his liability

under Subsection (a), jointly and severally liable for the damages recoverable by the claimant under Section 33.012 with respect to a cause of action if:

(1) the percentage of responsibility attributed to the defendant is greater than 20 percent; and

(2) only for a negligence action pursuant to Section 33.001(a) or (c), the percentage of responsibility attributed to the defendant is greater than the percentage of responsibility attributed to the claimant. . . .

*Id.*

We disagree. Being liable to pay a portion of a judgment rendered against another defendant under § 33.013 is not the same as being liable for another's conduct. Section 33.013 does not impose liability on Crown for Coastal's conduct; instead, it requires Crown to potentially pay the portion of the judgment rendered against Coastal for Coastal's own conduct. There are no allegations in the Stewart lawsuits that Coastal committed acts or omissions for which Crown is legally liable or responsible, such as an agency relationship. We find that Crown is not an additional insured under § II.A.1.e.

## B. "Using" the Truck

Next, Crown asserts it is an additional insured under § II.A.1.b of the policy because it was "using" the truck with Coastal's permission. Citing to a case from the United States Fourth Circuit Court of Appeals, Crown argues that "using" the truck includes "loading and unloading." *See Travelers Ins. Co. v. Employers' Liab. Assur. Corp.*, 367 F.2d 205, 206 n. 2 (4th Cir.1966).

In *Travelers Ins. Co. v. Employers' Liab. Assur. Corp.*, an employee of Stewart Petroleum, which operated tank trucks, was loading oil into a truck at a facility owned by Hess, when Stewart's employee was injured as a result of falling backwards off the truck when the wire cord connected to the manual lever snapped because of a defect. *See id.* at 206. After settling the employee's lawsuit, Hess and its insurer, Travelers, looked to Stewart Petroleum's insurer, Employer's, for reimbursement. *See id.* The Fourth Circuit, noting that the word "use" was specifically defined in the policy as including "loading and unloading thereof," found that use was not restricted to situations in which movement of the vehicle is involved. *See id.* at 207. The court found:

Hess was intimately involved in the loading operation itself. It maintained the facility in contemplation of its regular use in the manner in which [Stewart's employee] used it in conjunction with the loading of its products in customers' vehicles. The operation of the lever was part of the use of the truck in loading. As this entire operation was with the permission of the named insured, the policy covers such use.

*Id.* at 208.

The Texas Supreme Court has also defined "use." *See Travelers Ins. Co. v. Employers Cas. Co.*, 380 S.W.2d 610 (Tex. 1964). In *Travelers Ins. Co. v. Employers Cas. Co.*, three employees of a general contractor were killed in a construction accident, when a crane owned and operated by Borders Steel Erection Co. collapsed as it was being used to transport ready-mix concrete from a truck owned by Capital Aggregates, Inc. to the concrete forms of the general contractor. *See id.* at 611. The issue was whether Borders was covered by Capital's automobile liability policy.

Expressly included in the policy's definition of "use" of an automobile was "the loading and unloading thereof." *See id.* at 612. The court adopted the meaning of loading and unloading as " 'embrac[ing], not only the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting goods between the vehicle and the place from or to which they are being delivered.' " *Id.* (quoting *Wagman v. American Fid. & Cas. Co.*, 304 N.Y. 490, 109 N.E.2d 592 (1952)).

The issue was not who owned or controlled the concrete, but instead, was whether Borders was unloading the truck and, thereby, using it while the bucket full of concrete was being moved from the truck to the contractor's forms. *See id.* at 614. The court, finding that the accident was the result of the collapse of the crane, which was transporting concrete from the truck to the forms and the injuries arose from the use or unloading of the truck, held that Borders was entitled to the pro-

tection afforded by the policy covering the truck. *See id.*

■ Neither case, however, is applicable here. The policies in those cases specifically define "use" to include "loading and unloading." Section II.A.1.b.3, on the other hand, specifically and expressly excludes "[a]nyone other than [Coastal's] employees, partners, a lessee or borrower or any of their employees *while moving property to or from a covered auto.*" (emphasis added).

Recognizing the limitation under § II.A.1.b.3, Crown alternatively argues it is not excluded under that section because although it was "loading" the trailer because the trailer was at its premises, Crown was not *physically* moving the property to or from the truck at the time of the terminal incident because the loading bays are self-operated, i.e., the truck drivers move the property to the trucks themselves. Contrary to Crown's assertion, the policy does not restrict "moving" to physical movement. We conclude Crown is not an additional insured under § II.A.1.b of the policy.

## C. Claims within the Policy's Coverage

■ Transport contends that even if Crown were an additional insured under the policy, it still did not owe Crown a defense in the Stewart lawsuits. The insurer's duty to defend is determined by the allegations contained in the petition and the language of the policy. *See Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). If the petition does not allege facts within the scope of the policy's coverage, an insurer is not required to provide a defense. *See Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821 (Tex.1997).

■ The plaintiffs in the Stewart lawsuits sued Crown for damages resulting from the negligent maintenance and operation of its terminal loading facility, not for the negligent use and operation of Coastal's truck. Therefore, the claims in the Stewart lawsuits against Crown are not covered by the policy. The trial court did not err in granting Transport's motion for summary judgment or in denying Crown's motion for summary judgment.

## IV. Coastal v. Crown

### A. Findings of Fact and Conclusions of Law

■ As a preliminary matter, Coastal contends the trial court erred in not filing findings of fact and conclusions of law because it could have granted Crown's motion for summary judgment on more than one ground. Findings of fact and conclusions of law, however, "have no place in a summary judgment proceeding." *Linwood v. NCNB Texas,* 885 S.W.2d 102, 103 (Tex.1994). If summary judgment is proper, then there are no facts to find, and the legal conclusions have already been stated in the motion and the response. *See IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 441 (Tex.1997). The trial court should not make, and the appellate court cannot consider, such findings and conclusions in connection with a summary judgment. *See id.* Therefore, the trial court did not err in not making any findings of fact and conclusions of law.

### B. Validity and Enforceability of the Indemnity Provision

#### 1. Actual Notice

■ Coastal contends the indemnity agreement does not satisfy the requirements of fair notice. Risk-shifting clauses must satisfy two fair notice requirements: the express negligence doctrine and the conspicuousness requirement. *See Littlefield v. Schaefer,* 955 S.W.2d 272, 274 (Tex. 1997). The express negligence doctrine provides that the intent of the parties to indemnify the indemnitee from the consequences of its own negligence must be specifically stated within the four corners of the contract. *See Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.

1987).[3] The conspicuous requirement mandates that something must appear on the face of the instrument to attract the attention of a reasonable person. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993).

█ The indemnity provision in the Agreement states in its entirety:

4. The withdrawal, loading, transporting and delivery of products withdrawn by CARRIER shall be the sole responsibility of CARRIER, and CARRIER hereby covenants and agrees to indemnify, defend at its own cost, and hold CROWN, its directors, officers, agents, and employees harmless from any and all actions and causes of action, claims, demands, liabilities, losses, damage, injury, cost or expense of whatever kind or nature, including cost of litigation, attorneys' fees, and reasonable expenses in connection therewith, brought or presented by any person, firm or corporation whatsoever, including, but not limited to, third parties, employees or agents of CARRIER, and their dependents and personal representatives, for injuries or the death of any person, or damage to or loss of property, arising out of any act or omission of CARRIER, its agents, servants, or employees, in connection with or incidental to the withdrawal, loading, transporting and delivery of products hereunder by CARRIER irrespective of whether CROWN, its directors, officers, or employees were concurrently negligent, with CARRIER and irrespective of whether CROWN, its directors', officers', or employees' negligence, if any, was active or passive. The indemnity provided for in this paragraph shall have no application to any claim, liability or cause of action resulting from the sole negligence of CROWN. CARRIER shall be responsible for any damages or injuries caused by any third party, authorized or unauthorized, using CARRIER's keys or cards for access to the Terminal or who gains entry to [the] Terminal as a result of the use, authorized or unauthorized, of CARRIER's keys or cards unless CARRIER has previously notified CROWN of the loss, theft, or possible unauthorized use of such key or card. Notification shall be made to Crown Central Petroleum Corporation, 1319 Red Bluff—Pasadena, Tx, telephone 920–4123.

█ Crown contends the fair notice requirements are not applicable here because Coastal had actual notice of the indemnity provision contained in the Agreement. The fair notice requirements are not applicable when the indemnitee establishes the indemnitor had actual notice or knowledge of the indemnity agreement. *See Dresser Indus., Inc.*, 853 S.W.2d at 508 n. 2 (citing *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex.1990)). The indemnitee has the burden of establishing actual notice or knowledge. *See id.*

Coastal stipulated that Richard Atwell, the President of Coastal and who signed the Agreement on behalf of Coastal, read the Agreement when he signed it. Coastal complains that Crown did not offer evidence that Atwell actually noticed the indemnity language when he read the Agreement. The Agreement is less than two and one-half pages in length and contains eight paragraphs; the indemnity provision comprises the largest paragraph in the Agreement; and the indemnity provision is referred to in two other paragraphs in the Agreement. We find the fact that Atwell read the Agreement to be sufficient to establish actual notice. *See Goodyear Tire & Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916, 919 (Tex.1978), *overruled on other grounds by Dresser Indus., Inc.*, 853 S.W.2d at 509 (finding testimony of president and vice president of the indemnitor/company that they had read parts of the back of purchase order containing contract provisions, including indemnity provision, was some evidence of

3. Coastal does not raise the express negligence doctrine on appeal.

actual notice). Because Crown has established that Coastal had actual notice of the indemnity provision, we need not address the fair notice requirements.

### 2. Texas Oilfield Anti–Indemnity Act

■ Coastal contends the indemnity provision is void under the Texas Oilfield Anti–Indemnity Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 127.001 *et seq.* (Vernon 1997 & Supp.2000). The Anti–Indemnity Act makes void and unenforceable any provision in an agreement pertaining to a well for oil, gas or water or to a mine for a mineral if it purports to indemnify a person against loss or liability for damage caused by or resulting from the sole or concurrent negligence on the part of the indemnitee, his agent or employee, or an individual contractor directly responsible to the indemnitee. *See Phillips Petroleum Co. v. Brad & Sons Constr., Inc.,* 841 F.Supp. 791, 793 (S.D.Tex.1993) (citing TEX. CIV. PRAC. & REM.CODE ANN. § 127.003).[4]

The Act defines "agreement:"

(1) "Agreement pertaining to a well for oil, gas, or water or to a mine for a mineral":

(A) means:

(i) a written or oral agreement or understanding concerning the rendering of well or mine services; or

(ii) an agreement to perform a part of those services or an act collateral to those services, including furnishing or renting equipment, incidental transportation, or other goods and services furnished in connection with the services;

. . .

TEX. CIV. PRAC. & REM.CODE ANN. § 127.001(1). It further defines "well service:"

(4) "Well or mine service":

(A) includes:

(i) drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, purchasing, gathering, storing, or transporting oil, brine water, fresh water, produced water, condensate, petroleum products, or other liquid commodities, or otherwise rendering services in connection with a well drilled to produce or dispose of oil, gas, other minerals or water; and

(ii) designing, excavating, constructing, improving, or otherwise rendering services in connection with a mine shaft, drift, or other structure intended for use in exploring for or producing a mineral; but

(B) does not include:

(i) purchasing, selling, gathering, storing, or transporting gas or natural gas liquids by pipeline or fixed associated facilities; or

(ii) construction, maintenance, or repair of oil, natural gas liquids, or gas pipeline or fixed associated facilities.

TEX. CIV. PRAC. & REM.CODE ANN. § 127.001(4).

Coastal contends the Agreement constitutes a written agreement concerning the rendering of well services because it includes an agreement to perform incidental transportation, which Coastal claims is an act that is collateral to well services. In support of this contention, Coastal directs

---

4. Section 127.003 states:

(a) *Except as otherwise provided by this chapter, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water to a mine for a mineral is void if it purports to indemnify a person against the loss or liability for damage that:*
(1) is caused by or results from the sole or concurrent negligence of the indemnitee, his agent or employee, or an individual contractor directly responsible to the indemnitee; and
(2) arises from:
(A) personal injury or death;
(B) property injury; or
(C) any other loss, damage, or expense that arises from personal injury, death, or property injury.
TEX. CIV. PRAC. & REM.CODE ANN. § 127.003.

the court to the following sentence in the Agreement: "The withdrawal, loading, transporting and delivery of products withdrawn by CARRIER shall be the sole responsibility of CARRIER."

The Anti–Indemnity Act applies to contracts for services involved in the drilling or servicing of wells. *See Phillips Petroleum Co.*, 841 F.Supp. at 795–96. Crown is involved in the refining, supply, and transportation of petroleum products. The Agreement only granted "key-stop privileges;" it did not involve the drilling or servicing of a well. Therefore, we find the Act does not encompass this activity and is not applicable to the Agreement and, therefore, does not render the indemnity agreement void and unenforceable. *Cf. id.* at 796 (holding that the Act did not encompass work done in connection with a pipeline).

### 3. Texas Railroad Commission Rules

■ Coastal contends the indemnity and insurance provisions violate regulations promulgated by the Texas Railroad Commission pursuant to its authority under the Texas Motor Carrier Act.[5]

The Motor Carrier Act regulates motor carriers' use of public highways for private gain. *See Steve D. Thompson Trucking, Inc. v. State*, 685 S.W.2d 129, 131 (Tex. App.-Austin 1985, writ ref'd n.r.e.). Texas courts have long held that the Texas Legislature enacted the Act out of concern for public safety, physical protection of highways, and uneconomic and discriminatory practices within the trucking industry. *See Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 634 (Tex.1964); *Berry v. Golden Light Coffee Co.*, 160 Tex. 128, 327 S.W.2d 436, 438 (1959); *New Way Lumber Co. v. Smith*, 128 Tex. 173, 96 S.W.2d 282, 290 (1936); *Railroad Comm'n of Tex. v. Waste Management of Tex., Inc.*, 880 S.W.2d 835, 840 (Tex.App.-Austin 1994, no writ); *see also Steele v. General Mills, Inc.*, 329 U.S. 433, 440, 67 S.Ct. 439, 91 L.Ed. 402 (1947) (observing that the Motor Carrier Act was designed to be a part of state transportation regulatory system applicable alike to all lines of transportation which represents a " 'studied effort ... to prevent, through regulation, unfair, discriminatory, or destructive competition between such authorized carriers as would ultimately impair their usefulness' ") (quoting *Texas & P. Ry. Co. v. Railroad Comm'n*, 138 S.W.2d 927, 931 (Tex.Civ. App.-Austin 1940), *rev'd on other grounds*, 138 Tex. 148, 157 S.W.2d 622 (1941)).[6]

The Agreement grants Coastal the right to enter Crown's premises for the purpose of loading and carrying away petroleum products. We find the Motor Carrier Act and the regulations promulgated pursuant to the Act do not apply to the Agreement between Crown and Coastal and, therefore, do not render the indemnity provision void and unenforceable.

---

**5.** The Act and regulations, which were in effect at the time of the accident in 1993, have since been repealed. *See* Act of June 15, 1995, 74 th Leg., R.S., ch. 705, § 31, 1995 Tex. Gen. Laws 3740.

**6.** The Act's stated purpose was contained in former § 22b of the Act:

Declaration of Policy. The business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business affected with the public interest. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and that the various transportation agencies of the State may adjusted and correlated so that public highways may serve the best interest of the general public. Act of June 15, 1995, 74 th Leg., R.S., ch. 705, § 31, 1995 Tex. Gen. Laws 3740.

## C. Additional Insured Obligation

■ Assuming the additional insured provision was intended to assure performance of the indemnity obligation and the indemnity provision is void and unenforceable, Coastal argues the summary judgment granted in favor of Crown cannot stand on the ground that it breached an obligation to make Crown an additional insured.

The Agreement states with respect to insurance:

5. CARRIER agrees to purchase at CARRIER's cost the following insurance:

\* \* \*

b. Comprehensive General Liability including care, custody and control coverage and liability assumed with $1,000,000 limit per occurrence for bodily injury and property damage combined.

c. Automotive Liability including all vehicles and equipment used by Carrier in the amount of $1,000,000 per accident for bodily injury and property damage.

Such insurance shall include coverage for liability arising out of loading and unloading and shall fully extend to, defend and protect CROWN. CARRIER shall furnish certificates showing insurance is in force and providing 30 days written notice to CROWN prior to any change, non-renewal or cancellation. In the event CARRIER is self-insured, CROWN may accept evidence of CARRIER's financial responsibility in lieu of Certificate(s) of insurance.

The liability of CARRIER under Section 4 of this Agreement shall not be limited to or by the insurance required of CARRIER hereunder. The provisions of paragraphs 4 and 5 shall remain valid even after the termination of this Agreement.

Referring to the "liability assumed" language of § b of the Agreement, Coastal contends the provision to provide insurance only covers indemnification, not an additional insured. Coastal argues that because the indemnification provision here is void and unenforceable, the provision to provide insurance is also invalid.

Crown, on the other hand, asserts that even if the indemnity provision is unenforceable, the additional insured provision is valid. Crown agrees that the "liability assumed" language refers to Coastal's indemnity obligation. Crown, however, relying on the language, "[s]uch insurance shall include coverage for liability arising out of loading and unloading and shall fully extend to, defend and protect CROWN," contends the additional insured provision was not intended merely to assure performance of the indemnity provision, but instead, is an obligation independent of and in addition to the indemnity provision. We agree. This provision requiring Coastal to provide insurance constitutes an obligation separate from merely providing coverage for indemnification. *See Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 805 (Tex.1992) (holding that clause, which provided that "All insurance coverage carried by Seller ... shall extend to and protect Purchaser," supported the additional insured requirement, not the indemnity agreement, was a separate obligation and, therefore, was not prohibited by the Anti–Indemnity Statute). Section 5 of the Agreement is valid and enforceable, and obligates Coastal to make Crown an additional insured under the policy.

## D. Indemnity for Claims Asserted by Coastal

■ Coastal asserts the claims it brought against Crown for the loss of its truck and trailer were not covered by the indemnity provision. Therefore, according to Coastal, the $211,422.98 included in the judgment representing attorney's fees, costs, and expenses, which Crown incurred in defending Coastal's claims, also is not covered by the indemnity provision.

■ An indemnity provision does not apply to claims between the parties to the agreement; instead, it obligates the indemnitor to protect the indemnitee against claims brought by a person not a party to the agreement. *See Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex.App.-Austin 1999, no pet. h.); *Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex.App.-Houston [14th Dist.] 1992, no writ). Crown, however, argues that but for Coastal's breach of § 5 of the Agreement to provide Crown insurance, Crown would have received a defense against Coastal's claims by virtue of the insurance Coastal was to have provided to Crown. We agree. The reasonable attorney's fees and expenses, which Crown expended in defending Coastal's claims, constitute damages resulting from Coastal's breach of the insurance provision of the Agreement. Therefore, the trial court did not err in awarding Crown the costs of defending Coastal's claims as damages for breach of the insurance provision.

The trial court did not err in granting Crown's and Liberty Mutual's motions for summary judgment against Coastal or in denying Coastal's motion for summary judgment. Accordingly, the judgment of the trial court is affirmed.