**Jary GANSKE and Shirley Ganske, Appellants,**

v.

**Donna SPENCE, as Independent Executor of the Estate of Wayman R. Spence, Deceased, Appellee.**

**No. 10–01–315–CV.**

Court of Appeals of Texas, Waco.

Jan. 28, 2004.

 
 
 
 

 
 

 
 
 

 
 
 
 
 

 
 
 
 
 

 
 
 
 

 
 

 
 

David G. Tekell, Law Office of David G. Tekell, Waco, James D. Baskin, III, Baskin Law Firm, Austin, for appellants.

Artie G. Giotes, Jim Hering, Pakis, Giotes, Page & Burleson, P.C., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.*

## OPINION

TOM GRAY, Chief Justice.

The trial court granted summary judgment for Donna Spence, as independent executor of the estate of Wayman R. Spence. Jary and Shirley Ganske complain that the contract provision at issue is ambiguous. Further, Jary and Shirley argue that summary-judgment evidence was improperly excluded and that their claims are not barred by res judicata. Accordingly, Jary and Shirley assert that the trial court erred in granting the summary judgment. Because we hold the summary-judgment evidence was properly excluded and the indemnity provision is unambiguous, we affirm the trial court's judgment.

### BACKGROUND

This case presents a rather complicated procedural background.

* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. *See* Tex.R.App. P. 41.1(c). Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the court.

### The Business Together

▮ Jary and Shirley Ganske were business associates of Dr. Wayman Spence, deceased, whose estate is now a party to this appeal.[1] Jary Ganske was the President and CEO of WRS Group; Shirley Ganske was an employee of WRS Group. Spence was the Chairman and controlling shareholder of WRS Group. Jary and Shirley parted ways from Spence and WRS Group.

### The First Dispute

There was a prior dispute. To settle the prior dispute, an "AGREEMENT REGARDING COMPROMISE AND SETTLEMENT OF DISPUTED MATTERS, NON–DISCLOSURE, NON–COMPETITION, AND MUTUAL RELEASES OF ANY AND ALL CLAIMS" was entered into. This agreement was signed by Jary and Shirley. It was also signed by Spence in two capacities: 1) his individual capacity; and 2) for WRS Group. In addition to global mutual releases, the agreement contains an indemnity provision. The meaning of the indemnity provision controls the result of the current dispute. The provision reads:

> 6.03 *No Assignment of Claims and Indemnification.* The Ganskes and the WRS Parties represent and warrant that no persons, including shareholders, other than them have any right, title, or interest in and to the claims they have released herein and they hereby indemnify and hold each other, their officers, directors, employees, agents and representatives harmless and agree to defend the foregoing against any and all costs, expenses, or liabilities that may occur as

a result of the assertion of the claims against such parties or parties released in this Article *by other persons claiming by, through or under or because of the relationship with the parties.*

(Emphasis added). After the agreement was signed, Spence passed away, and his son-in-law became WRS's president.

### The Second Dispute

Jary and Shirley subsequently intervened in a lawsuit, which was removed to federal court, involving WRS, the Estate, and a former shareholder of WRS. This lawsuit concerned the potential tax liability for money received from WRS by the former shareholder. Jary and Shirley had also received money from WRS in a similar manner and questioned the related tax liability. According to the record before us, Jary and Shirley intervened in the suit and sought a declaratory judgment against WRS regarding the classification of the money as "income."

After Jary and Shirley intervened in the second dispute, WRS asserted counterclaims against them. WRS, on the one side, and Jary and Shirley, on the other, filed cross motions for summary judgment. Meanwhile, the Estate filed a motion to dismiss the claims filed against it by Jary and Shirley. The federal district court ordered that Jary and Shirley's motion for summary judgment be partially granted, specifically as to the counterclaims asserted by WRS. The court's reasoning was that the agreement released any claims that WRS may have against Jary and Shirley "whether known or unknown, suspected or unsuspected." The federal district court further found that Jary and Shirley

---

1. We recognize that an "Estate" is not an entity that can be a party to litigation. *Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex.1987). It is the personal representative of the estate, in a representative capacity, that is the proper party. *Id.* We use "Estate" only as a shorthand reference in place of "Donna Spence as the personal representative of the Estate of Dr. Wayman Spence."

had not asserted any claims against the Estate, and therefore denied as moot the Estate's motion to dismiss.

*The Third Dispute*

Jary and Shirley filed the lawsuit underlying this appeal to recover attorney's fees and costs incurred in the second dispute, the federal lawsuit. They sued the Estate alleging that the indemnity provision of the agreement between WRS, Spence, Jary, and Shirley obligates the Estate to reimburse Jary and Shirley for costs incurred because of the claims filed against Jary and Shirley by WRS in the federal lawsuit. The Estate filed a motion for summary judgment asserting two grounds. The trial court granted the Estate's motion for summary judgment without specifying the basis and entered a take nothing judgment against Jary and Shirley.

Jary and Shirley appeal the take nothing judgment, bringing three issues for review. Those issues are: 1) that the trial court erred in concluding as a matter of law that the obligations of the Estate under the indemnity provision did not extend to claims made against Jary and Shirley by WRS; 2) that the trial court erred by refusing to consider summary-judgment evidence regarding the circumstances surrounding the formation of the agreement between the parties; and 3) that Jary's and Shirley's indemnification claims against the Estate are not barred by res judicata because of the federal lawsuit.

We must first decide whether the trial court could consider the evidence, which is the subject of the second issue, in determining whether the indemnity provision was ambiguous. The trial court determined the evidence was not proper summary judgment evidence. If the trial court could consider the deputed summary judgment evidence, but, based on its ruling which excluded the evidence, did not consider it, we must consider the evidence in

our determination of the first issue. It would be evidence which the trial court should have considered and, therefore, which this Court must consider in determining whether the summary judgment evidence created a fact issue regarding the meaning of the indemnity provision.

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

The standard of review for a summary judgment is well established: (i) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and is entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Mgt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

For a defendant to prevail on summary judgment, it must show there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's cause of action or establish each element of an affirmative defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). If the defendant disproves an element of the plaintiff's cause of action as a matter of law, summary judgment is appropriate. *Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 282 (Tex.1996).

When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

### ISSUE TWO—SURROUNDING CIRCUMSTANCES

In their second issue, Jary and Shirley argue that the trial court erred by refusing to consider summary-judgment evidence. They contend the evidence regarding the circumstances surrounding the formation of the agreement is admissible summary-judgment evidence. We must determine what summary-judgment evidence should have been considered by the trial court before we can review the merits of the summary judgment. Thus we must address issue two regarding objections to the summary-judgment evidence before we reach issue one regarding the interpretation of the indemnity provision.

*Applicable Law*

In reviewing whether a trial court has erred in the admission or exclusion of summary-judgment evidence, as with any evidence, we use an abuse-of-discretion standard. *Ash v. Hack Branch Distributing Co., Inc.*, 54 S.W.3d 401, 409 (Tex.App.-Waco 2001, pet. denied). A trial court "abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.2002) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985)).

Jary and Shirley complain that the trial court erroneously excluded summary-judgment evidence that goes to the circumstances surrounding the formation of the contract. The Estate argues that the evidence should be excluded based on "best evidence" and "parol evidence" objections. Jary and Shirley contend these are improper objections upon which to exclude the evidence. The best evidence rule "requires that if the contents of a writing are to be proved, it must be by the production, if possible, of the very writing itself." *Ortiz v. State*, 651 S.W.2d 764, 766 (Tex.Crim.App.1983). Parol evidence cannot be admitted to add to, vary, or contradict a contract's unambiguous provisions. *Wilkins v. Bain*, 615 S.W.2d 314, 315 (Tex. Civ.App.-Dallas 1981, no writ).

*Analysis*

Upon examination of the record, we find objections made upon best evidence and parol evidence grounds that were sustained by the trial court to three portions of the summary-judgment evidence. Two were portions of an affidavit sworn to by the lawyer that represented Jary and Shirley during the negotiations culminating in the agreement. And the third is a portion of an affidavit sworn to by Jary. Because these are the objections about which Jary and Shirley complain of the ruling our analysis of the objections is limited to these three portions of the summary-judgment evidence.

First, we will consider the "best evidence" objection. The parties in this case do not dispute the contents of the writing. The wording of the agreement is not contested. It is the interpretation and construction of a particular provision of the agreement that is at issue. A best evidence objection to this evidence is improper. If the trial court excluded the evidence on a best evidence objection, it erred.

We now consider whether the evidence was properly excluded based upon the parol-evidence objection. In order to decide whether the evidence adds to, varies, or contradicts the indemnity provision at issue, we must look more closely at the language of each objected-to portion of summary-judgment evidence.

The first portion, in the attorney's affidavit, states: "The indemnity agreement *was meant to insure* the peace and specifically to deter any action by any party,

including Scott Salmans, whether individually, through WRS Group, or through any other entity, against the Ganskes." The second portion, also in the attorney's affidavit, reads: *"It was specifically our intent* to have the potential liability flow to Mr. Spence so that Mr. Salmans, through WRS or any entity, or others would think twice about instigating litigation." The third portion is a passage in Jary's affidavit that reads: "Accordingly, *my attorney demanded* that Dr. Spence individually agree to indemnify me and my wife and hold us harmless with respect to any costs or liabilities arising out of the assertion of the released claims against us by WRS Group, Inc. or any other party."

All three passages have a common trait: they each try to explain what it was the parties meant or sought to achieve by the agreement. This is evident by the use of the phrase "was meant to insure" in the first referenced summary-judgment evidence, "it was specifically our intent" in the second, and "my attorney demanded" in the third. The phrases do not describe the circumstances surrounding the execution of the agreement, but are merely efforts to tell the trial court what the parties sought to accomplish by the agreement. By focusing on the result the parties sought to achieve rather than the circumstances existing at the time of execution of the document, the evidence attempts to add to, vary, or contradict the terms of the indemnity provision in the agreement.

We conclude that the trial court did not abuse its discretion in excluding this evidence upon a timely objection that it was parol-evidence. And because this evidence was properly excluded, we do not consider it when deciding whether a fact issue exists regarding the interpretation of the agreement, as we would if the evidence had related to the circumstances existing at the time the agreement was made. We overrule issue two.

### ISSUE ONE—AMBIGUITY OF PROVISION

We will now consider the indemnity provision of the agreement and determine whether it is ambiguous. Jary and Shirley argue in their first issue that the trial court erred in concluding that the indemnity provision of the agreement is unambiguous, and that the obligations of the Estate under the indemnity provision do not extend to claims made against Jary and Shirley by WRS.

*Applicable Law*

 Whether a contract is ambiguous is a question of law that the court determines by examining the contract as a whole, in light of the circumstances present when the parties entered into the contract. *Grimes v. Andrews*, 997 S.W.2d 877, 881 (Tex.App.-Waco 1999, no pet.). A contract is not ambiguous when it is so worded that it can be given a certain or definite legal meaning or interpretation. *Id.* at 882. It is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Id.* But, an ambiguity does not arise merely because the parties advance conflicting interpretations. *Id.* If a contract is ambiguous, then a fact issue exists on the parties' intent, and summary judgment is not proper. *Id.*

 In construing a contract provision, the court may ascertain the intention of the parties so that their purpose may be effectuated, but it is the objective intent, not the subjective intent that must be looked at. *Meyerland Community Improvement Assn. v. Temple*, 700 S.W.2d 263, 267 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). "[I]t is the intent expressed or apparent in the writing that controls." *Id.* (citing *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d

515, 518 (Tex.1968)). Indeed, "[t]he terms of the contract must be the conclusive factor because such terms may have a meaning different from that which either party contemplated." *Id.*

Further, in considering indemnity provisions, it is important to note that an indemnity provision generally does not apply to claims between the parties to an agreement. *Wallerstein v. Spirt,* 8 S.W.3d 774, 780 (Tex.App.-Austin 1999, no pet.) (citing *Derr Constr. Co. v. City of Houston,* 846 S.W.2d 854, 858 (Tex.App.-Houston [14th Dist.] 1992, no writ)). "Rather, [the provision] obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision." *Id.* But we should not be heard to say that an indemnity provision cannot be written such that the parties indemnify each other against claims they later assert against the other. *See Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 208 (Tex. 1999).

*Analysis*

Jary and Shirley argue that the circumstances present when the parties entered into the agreement show they were concerned that WRS would soon be taken over by Spence's son-in-law, and Jary and Shirley specifically wanted Spence's personal guarantee that WRS, under the son-in-law's control, would not assert claims against them. Jary and Shirley conclude that these circumstances dictate that the indemnity provision was intended to provide for either one of the "WRS Parties"—WRS or Spence—to indemnify Jary and Shirley against the other of the "WRS Parties." Jary and Shirley argue in their brief that a reasonable interpretation of the clause is that:

> [Dr. Spence] ... hereby indemnif[ies] and hold[s] [Jary and Shirley] ... harmless and agree[s] to defend [Jary and Shirley] against any and all costs, expenses, or liabilities that may occur as a result of the claims against [Jary and Shirley] by *other persons* claiming by ... [WRS Group].

(Emphasis added). Jary and Shirley contend that the only way to give effect to "claiming by ... the parties" is to allow "other persons" to mean WRS. We disagree. While Jary and Shirley may very well have been concerned about WRS asserting claims against them, we conclude that this interpretation of the indemnity provision is not one to which the provision is reasonably susceptible. The intent that is unambiguously apparent in the provision, as written, is that the WRS Parties, which is WRS and the Estate, agrees to indemnify Jary and Shirley against the assertion of claims against them "by other persons," including other persons claiming by their relationship with the WRS Parties. Because WRS is part of the WRS Parties, it cannot, at the same time, be an "other person" under the indemnity provision. Again, we do not say that the provision could not have been written such that the parties indemnify each other against claims asserted against each other, only that, in this case, it was not. Issue one is overruled.

## CONCLUSION

The evidence which Jary and Shirley contend should have been considered in determining whether the agreement was ambiguous and the meaning of the provision was properly excluded. Also, the indemnity provision is unambiguous. Because the trial court's judgment is proper based upon this analysis, we need not decide the third issue raised by Jary and Shirley. The trial court's judgment is affirmed.

Justice VANCE concurring.

BILL VANCE, Justice, concurring.

I arrive at the same conclusion as the majority—that the judgment should be affirmed. I write separately to explain our differences.

By addressing the propriety of the Ganskes' summary judgment evidence before determining whether the contract is ambiguous, the majority implies that their summary judgment evidence could affect that decision. Extraneous evidence is not admissible for the purpose of *creating* an ambiguity. *Nat'l Union Fire Ins. Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex.1995). Thus, we should consider the Ganskes' first issue—involving whether the agreement was ambiguous—first. The plain language reveals that "such parties released in this Article" refers to the Ganskes and the WRS parties. Therefore, "other persons" does *not* refer to the Ganskes and the WRS parties. Accordingly, as a matter of law the clause was not ambiguous. Under this provision, the Ganskes are not entitled to attorney's fees in the disputed case because that claim was brought by WRS Group, Ltd. (successor to WRS Group, Inc.), who was a WRS party and therefore not an "other person."

Because the agreement is unambiguous, the summary judgment evidence offered by the Ganskes was inadmissible to either create an ambiguity or to contradict or vary its terms.

Agreeing with the result reached by the majority but not the method of analysis, I concur in affirming the judgment.