

# IN THE
# TENTH COURT OF APPEALS

———————————

### No. 10-10-00017-CV

**TEXAS ALL RISK GENERAL AGENCY,
INC., KELLY ANN DAVIS, DAVID DAY,
TARGA INVESTMENTS CORPORATION,**

                                        **Appellants**

 **v.**

**APEX LLOYDS INSURANCE COMPANY,**

                                        **Appellee**

———————————

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2007-4185-4**

## MEMORANDUM OPINION

Texas All Risk General Agency, Inc., Kelly Ann Davis, David Day, and TARGA

Investments Corp. jointly appeal from a trial court's verdict in a non-jury trial awarding

Apex Lloyds Insurance Co. a judgment for a breach of a general management

agreement. Appellants complain that: (1) the trial court's interpretation of the contract

was "oppressive, inequitable, unreasonable, and frustrates the spirit and purpose of the

agreement" and that the trial court should have interpreted the contract in a reasonable

manner which allowed them an initial period in which to comply with territorial

limitations in the contract; (2) that without a showing of a breach of the territorial

limitations in the contract Apex is not allowed to recover; and (3) that the trial court erred by assessing liquidated damages based on an invalid liquidated damages provision. Because we find that the trial court did not err, we affirm the judgment of the trial court.

*Background*

Texas All Risk General Agency Inc., hereinafter referred to as "TAR," entered into a managing general agency agreement with Apex Lloyds Insurance Company whereby TAR would sell insurance policies as a managing general agent of Apex. The agreement contained a provision that restricted the percentage of policies that could be issued in certain counties. The original period of the restrictions stated that TAR could write no more than ten percent of its policies with wind exposure in Harris County "[f]or the period from the date of contract through 11-30-07." The contract's effective date was May 20, 2007. The agreement also required TAR to submit monthly reports to Apex relating to the locations of where the policies were written, which were due 45 days after the end of each month.

The first report submitted to Apex indicated that in the month of July that four policies were written and two of them were from Harris County. Apex sent a letter to TAR on September 26, 2007 that expressed concerns regarding Apex's apparent breach of the territorial limitations with a demand that Apex comply with the restrictions. In October of 2007, TAR sold 28 policies, 24 of which were issued in Harris County. On November 2, 2007, Apex notified TAR of its intent to terminate the agreement in 180 days in accordance with the agreement. Additionally, Apex notified TAR that it was suspending TAR's right to sell policies effective immediately as allowed by the

agreement in the event of a breach.  Apex sent TAR a second notice of its intent to terminate the agreement on November 7, 2007.  That same day, TAR responded by sending notice of its intent to terminate the agreement with the 180 day notice.  TAR continued selling policies after it received the notice of suspension, which led to the filing of the instant suit.

Trial was before the court.  The trial court determined that TAR had breached the territorial limitations in the agreement and awarded damages and attorney's fees to Apex.  The trial court denied judgment on the rest of Apex's causes of action and on all of TAR's counter-claims.[1]

*Ambiguity in Contract*

TAR[2] complains in its first issue that the trial court erred in its interpretation of the agreement by finding that TAR was in breach of the agreement on November 2, 2007, the date of Apex's notice of intent to terminate the agreement and suspension of Apex's ability to sell policies.  TAR argues that the language of the agreement "[f]or the period from the date of contract through 11-30-07" requires that there can be no breach of the ten percent territorial limitation prior to November 30, 2007.  Our analysis must begin with a determination of whether or not the agreement is ambiguous.

In construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement.  *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam); *Carbona v. CH Medical, Inc.*, 266 S.W.3d

---

[1] No party complains of the denial of its causes of action in this appeal.

[2] This appeal was filed by Texas All Risk General Agency, Inc., Kelly Ann Davis, David Day, and TARGA Investments Corp. jointly; however, the judgment of the trial court was solely rendered against Texas All Risk General Agency, Inc.  Therefore, each issue is addressed as that of TAR only.

675, 680 (Tex. App.—Dallas 2008, no pet.). We discern intent from the agreement itself and the agreement must be enforced as written. *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 312. This consideration comes "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and we will "avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank*, 165 S.W.3d at 312 (*quoting Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). Further, "all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999).

Whether an agreement is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing at the time the contract was entered. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *Ganske v. Spence*, 129 S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Lopez v. Munoz, Hockema & Reed*, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Seagull Energy E & P*, 207 S.W.3d at 345. If the agreement can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and we will construe it as a matter of law. *Coker*, 650 S.W.2d at 393.

Neither the parties nor the trial court found this agreement ambiguous, and we likewise agree that it is not. Its meaning is therefore a question of law. *Coker*, 650 S.W.2d at 394. "The intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.). A court will not change a contract merely because the court or one of the parties comes to dislike its provisions or thinks that something else is needed. *Id*.

When we analyze this provision against the agreement as a whole, we find that the intent of the parties was that TAR was not to write more than ten percent of its policies in Harris County and that the monthly reports were to determine compliance on a monthly basis. TAR's computer software gave it the ability at all times to control where it wrote the insurance policies. We agree with the determination of the trial court that the contract is not ambiguous.

*Oppressive, Inequitable, Unreasonable Provision*

TAR further complains in issue one that the trial court's interpretation of the agreement finding that TAR breached the agreement prior to November 30, 2007, was oppressive, inequitable, unreasonable, and frustrated the spirit and purpose of the agreement. TAR's contention is that it was impossible for TAR to have not breached the territorial limitations in the agreement from the time it sold the first policy if it were in Harris County. In response, Apex contends that the purpose of the territorial limitations was to limit its exposure to large claims in and around Harris County, and that the provision was made with the intent to satisfy the Texas Department of

Insurance and Apex's reinsurers's concerns of a geographically-centered catastrophic loss.

The trial court found that the territorial limitations were intended to be closely monitored by Apex, in part, because of warranty limitations contained in a reinsurance agreement executed between Apex and two third-party reinsurers. The agreement between Apex and TAR provides that the terms of that reinsurance agreement would supersede the provisions of the agreement between TAR and Apex in the event of a conflict and that the execution of the reinsurance agreement was a condition precedent to the agreement between Apex and TAR. Further, the agreement provided that the authority of TAR could be less than that allowed in the reinsurance agreement but could not exceed that allowed in the reinsurance agreement. The reinsurance agreement provided that no more than 20% of the policies could be sold in Harris County. These restrictions were known to TAR when it entered into the agreement with Apex.

In light of the requirements that we are to read separate contracts governing the same "transaction" together, and that we are to construe contracts "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive," we do not find that the agreement was unreasonable, inequitable, or oppressive. *DeWitt County Elec. Coop.*, 1 S.W.3d at 102; *Frost Nat'l Bank*, 165 S.W.3d at 312. Rather, we find that the trial court's interpretation of the agreement is reasonable in light of the other provisions of the agreement and the reinsurance agreement, and that Apex's interpretation is not reasonable. If TAR was to have the entire six month

period in which to determine its compliance, the purpose of the monthly and quarterly reports would be meaningless. Additionally, in the section below the territorial limitation during the initial period, the agreement provided that "[b]eginning 12-1-07 and thereafter," TAR's territorial limitation was increased to 17.5 percent in Harris County. TAR's asserted interpretation that the limitations would only apply as of November 30, 2007 would render this provision entirely meaningless because there would be no termination date for the territorial limitation to be enforced. Nor do we find TAR's contention that it would have been in violation of the contract from the very beginning to frustrate the spirit of the agreement. We overrule issue one.

### No Breach, No Recovery

TAR complains in its second issue that because there was no breach of the agreement, Apex was not entitled to recover the amount it recovered or because the contract provision at issue in the agreement was illusory and unenforceable, and the trial court erred in determining otherwise. The agreement contained a provision in the "Fee Schedule" section that: "Regardless of the Fees earned by [Apex] and owed by [TAR] in (sic) during the first year of this Agreement, [TAR] shall not pay [Apex] an amount, in total, less than sixty thousand dollars ($60,000)." We have already determined that the trial court did not err in finding that there was a breach of the agreement by TAR.

### Illusory Contract

TAR complains that if the provision requiring it to pay Apex no less than sixty thousand dollars is interpreted as being a damage provision in the event of a breach, the agreement thus becomes illusory and void because it would potentially have allowed

Apex to terminate the agreement on the first day and obligate TAR to pay the sixty thousand dollars without a breach of the agreement by TAR.

The agreement is a bilateral contract, which is one in which there are mutual promises between two parties to the contract, each being both a promisor and a promisee. *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (1943); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied); *The Colony, Tex. v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 725 (Tex. App.—Fort Worth 2008, pet. dism'd by agr.). A bilateral contract must be based upon a valid consideration, in other words, mutuality of obligation. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997); *Frequent Flyer*, 281 S.W.3d at 224.

A contract that lacks mutuality of obligation is illusory and void and is unenforceable. *Frequent Flyer*, 281 S.W.3d at 224; *Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 914 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Failing to bind the promisor who retains the option of discontinuing performance without notice renders a promise illusory. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994). However, mutuality in each clause of a contract is not required when consideration is given for the contract as a whole. *Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 87 (Tex. App.—Amarillo 1994, writ denied).

The test for mutuality is applied and determined when enforcement is sought, not when the promises are made. *Hutchings*, 174 S.W.2d at 489; *Cherokee Communications, Inc. v. Skinny's, Inc.*, 893 S.W.2d 313, 316 (Tex. App.—Eastland 1994, writ denied). As the Texas Supreme Court stated in *Hutchings*:

Though a contract be void for lack of mutuality at the time it is made, and while it remains wholly executory, yet, when there has been even a part performance by the party seeking to enforce the same, and in such part performance such party has rendered services or incurred expense contemplated by the parties at the time such contract was made, which confers even a remote benefit on the other party thereto, such benefit will constitute an equitable consideration, and render the entire contract valid and enforceable.

*Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (Tex. 1943).

We find that regardless of whether the clause was illusory at the time the agreement was signed as alleged by TAR, the subsequent performance by both TAR and Apex pursuant to the agreement constituted an adequate consideration and therefore, the agreement was not illusory at the time of enforcement. *See Hutchings*, 174 S.W.2d at 489; *Frequent Flyer*, 281 S.W.3d at 224. We overrule issue two.

*Damages*

TAR also complains in its third issue that the trial court erred in awarding damages based on the clause in the agreement which provided that TAR would pay Apex no less than sixty thousand dollars in the first year of the agreement because that clause is an unenforceable liquidated damages provision. Further, TAR argues that because that clause is invalid, there was no evidence to support the trial court's judgment regarding damages. Apex counters TAR has waived this contention by failing to plead it as an affirmative defense or matter of avoidance.

An allegation that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of an avoidance which must be pled. *See* TEX. R. CIV. P. 94. Additionally, an assertion that a liquidated damages provision is a penalty is an affirmative defense that a defendant has the burden of pleading and proving. TEX.

R. CIV. P. 94; *Urban Television Network Corp. v. Creditor Liquidity Solutions, L.P.*, 277 S.W.3d 917, 919 (Tex. App.—Dallas 2009, no pet.). Failure to do so waives any objection on appeal. TEX. R. CIV. P. 90. TAR filed only a general denial and did not plead any affirmative defenses or matters in avoidance. Because this complaint was not pled for, we find that the trial court did not err in applying the clause in determining Apex's damages, and therefore, we do not reach TAR's complaint regarding the sufficiency of the evidence disregarding that clause in the agreement. We overrule issue three.

*Conclusion*

We find that the agreement was not ambiguous and the trial court did not err in its interpretation of the agreement. The agreement was not oppressive, inequitable, or unreasonable nor was it an illusory contract. We find that the complaint regarding the validity of the provision in the agreement which formed the basis of the trial court's calculation of damages was not preserved because it was not pled as a matter in avoidance or affirmative defense. We affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed November 10, 2010
[CV06]