IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00017-CV

 

Texas All Risk General Agency, 

Inc., Kelly Ann Davis, David Day, 

Targa Investments Corporation,

                                                                                    Appellants

 v.

 

Apex Lloyds Insurance Company,

                                                                                    Appellee

 

 



From the 170th District Court

McLennan County, Texas

Trial Court No. 2007-4185-4

 



MEMORANDUM  Opinion










 

            Texas All Risk General Agency, Inc.,
Kelly Ann Davis, David Day, and TARGA Investments Corp. jointly appeal from a
trial court’s verdict in a non-jury trial awarding Apex Lloyds Insurance Co. a
judgment for a breach of a general management agreement.  Appellants complain
that:  (1) the trial court’s interpretation of the contract was “oppressive,
inequitable, unreasonable, and frustrates the spirit and purpose of the
agreement” and that the trial court should have interpreted the contract in a
reasonable manner which allowed them an initial period in which to comply with
territorial limitations in the contract; (2) that without a showing of a breach
of the territorial limitations in the contract Apex is not allowed to recover;
and (3) that the trial court erred by assessing liquidated damages based on an
invalid liquidated damages provision.  Because we find that the trial court did
not err, we affirm the judgment of the trial court.

Background

            Texas All Risk General Agency Inc.,
hereinafter referred to as “TAR,” entered into a managing general agency
agreement with Apex Lloyds Insurance Company whereby TAR would sell insurance
policies as a managing general agent of Apex.  The agreement contained a
provision that restricted the percentage of policies that could be issued in
certain counties.  The original period of the restrictions stated that TAR
could write no more than ten percent of its policies with wind exposure in Harris County “[f]or the period from the date of contract through 11-30-07.”  The
contract’s effective date was May 20, 2007.  The agreement also required TAR to
submit monthly reports to Apex relating to the locations of where the policies
were written, which were due 45 days after the end of each month.  

            The first report submitted to Apex
indicated that in the month of July that four policies were written and two of
them were from Harris County.  Apex sent a letter to TAR on September 26, 2007
that expressed concerns regarding Apex’s apparent breach of the territorial
limitations with a demand that Apex comply with the restrictions.  In October
of 2007, TAR sold 28 policies, 24 of which were issued in Harris County.  On November 2, 2007, Apex notified TAR of its intent to terminate the agreement in 180
days in accordance with the agreement.  Additionally, Apex notified TAR that it
was suspending TAR’s right to sell policies effective immediately as allowed by
the agreement in the event of a breach.  Apex sent TAR a second notice of its
intent to terminate the agreement on November 7, 2007.  That same day, TAR
responded by sending notice of its intent to terminate the agreement with the
180 day notice.  TAR continued selling policies after it received the notice of
suspension, which led to the filing of the instant suit.

            Trial was before the court.  The trial
court determined that TAR had breached the territorial limitations in the
agreement and awarded damages and attorney’s fees to Apex.  The trial court
denied judgment on the rest of Apex’s causes of action and on all of TAR’s
counter-claims.[1]  

Ambiguity in Contract

TAR[2]
complains in its first issue that the trial court erred in its interpretation
of the agreement by finding that TAR was in breach of the agreement on November
2, 2007, the date of Apex’s notice of intent to terminate the agreement and
suspension of Apex’s ability to sell policies.  TAR argues that the language of
the agreement “[f]or the period from the date of contract through 11-30-07”
requires that there can be no breach of the ten percent territorial limitation
prior to November 30, 2007.  Our analysis must begin with a determination of
whether or not the agreement is ambiguous.  

In construing a written agreement, we must
ascertain and give effect to the parties’ intentions as expressed in the
agreement.  Frost Nat'l Bank v. L & F Distribs., Ltd., 165 S.W.3d
310, 311-12 (Tex. 2005) (per curiam); Carbona v. CH Medical, Inc., 266
S.W.3d 675, 680 (Tex. App.—Dallas 2008, no pet.).  We discern intent from the
agreement itself and the agreement must be enforced as written.  Deep Nines, Inc. v. McAfee, Inc., 246
S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.).  We consider the entire
writing and attempt to harmonize and give effect to all the provisions of the
contract by analyzing the provisions with reference to the whole agreement.  Frost
Nat'l Bank, 165 S.W.3d at 312.  This consideration comes “from a
utilitarian standpoint bearing in mind the particular business activity sought
to be served” and we will “avoid when possible and proper a construction which
is unreasonable, inequitable, and oppressive.”  Frost Nat’l Bank, 165
S.W.3d at 312 (quoting Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527,
530 (Tex. 1987)).  Further, “all writings that pertain to the same transaction
will be considered together, even if they were executed at different times and
do not expressly refer to one another.”  DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999).

Whether an agreement is
ambiguous is a question of law for the court to decide by looking at the
contract as a whole in light of the circumstances existing at the time the
contract was entered.  Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983); Ganske v. Spence, 129 S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.).  An
ambiguity does not arise simply because the parties advance conflicting
interpretations of the contract.  Seagull Energy E & P, Inc. v. Eland
Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006); Lopez v. Munoz, Hockema
& Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000).  A contract is
ambiguous when its meaning is uncertain and doubtful or is reasonably
susceptible to more than one interpretation.  Seagull Energy E & P,
207 S.W.3d at 345.  If the agreement can be given a certain or definite legal
meaning or interpretation, it is not ambiguous, and we will construe it as a
matter of law.  Coker, 650 S.W.2d at 393.

Neither the parties nor the
trial court found this agreement ambiguous, and we likewise agree that it is
not.  Its meaning is therefore a question of law.  Coker, 650 S.W.2d at
394.  “The intent of the parties must be taken from the agreement itself, not
from the parties’ present interpretation, and the agreement must be enforced as
it is written.”  Calpine Producer Servs., L.P. v. Wiser Oil Co., 169
S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.).  A court will not change a
contract merely because the court or one of the parties comes to dislike its
provisions or thinks that something else is needed.  Id.

When we analyze this provision against the
agreement as a whole, we find that the intent of the parties was that TAR was
not to write more than ten percent of its policies in Harris County and that
the monthly reports were to determine compliance on a monthly basis.  TAR’s
computer software gave it the ability at all times to control where it wrote
the insurance policies.  We agree with the determination of the trial court
that the contract is not ambiguous. 

Oppressive, Inequitable, Unreasonable Provision

            TAR further complains in issue one that the trial court’s
interpretation of the agreement finding that TAR breached the agreement prior
to November 30, 2007, was oppressive, inequitable, unreasonable, and frustrated
the spirit and purpose of the agreement.  TAR’s contention is that it was
impossible for TAR to have not breached the territorial limitations in the
agreement from the time it sold the first policy if it were in Harris County.  In response, Apex contends that the purpose of the territorial limitations
was to limit its exposure to large claims in and around Harris County, and that the provision was made with the intent to satisfy the Texas Department of
Insurance and Apex’s reinsurers’s concerns of a geographically-centered
catastrophic loss. 

            The trial court found that the
territorial limitations were intended to be closely monitored by Apex, in part,
because of warranty limitations contained in a reinsurance agreement executed
between Apex and two third-party reinsurers.  The agreement between Apex and
TAR provides that the terms of that reinsurance agreement would supersede the
provisions of the agreement between TAR and Apex in the event of a conflict and
that the execution of the reinsurance agreement was a condition precedent to
the agreement between Apex and TAR.  Further, the agreement provided that the
authority of TAR could be less than that allowed in the reinsurance agreement
but could not exceed that allowed in the reinsurance agreement.  The
reinsurance agreement provided that no more than 20% of the policies could be
sold in Harris County.  These restrictions were known to TAR when it entered
into the agreement with Apex. 

In light of the requirements that we are to read
separate contracts governing the same “transaction” together, and that we are
to construe contracts “from a utilitarian standpoint bearing in mind the
particular business activity sought to be served” and “avoid when possible and
proper a construction which is unreasonable, inequitable, and oppressive,” we
do not find that the agreement was unreasonable, inequitable, or oppressive.  DeWitt County Elec. Coop., 1 S.W.3d at 102; Frost Nat’l Bank,
165 S.W.3d at 312.  Rather, we find that the trial court’s interpretation of
the agreement is reasonable in light of the other provisions of the agreement
and the reinsurance agreement, and that Apex’s interpretation is not
reasonable.  If TAR was to have the entire six month period in which to
determine its compliance, the purpose of the monthly and quarterly reports
would be meaningless.  Additionally, in the section below the territorial
limitation during the initial period, the agreement provided that “[b]eginning
12-1-07 and thereafter,” TAR’s territorial limitation was increased to 17.5
percent in Harris County.  TAR’s asserted interpretation that the limitations
would only apply as of November 30, 2007 would render this provision entirely
meaningless because there would be no termination date for the territorial
limitation to be enforced.  Nor do we find TAR’s contention that it would have
been in violation of the contract from the very beginning to frustrate the
spirit of the agreement.  We overrule issue one.

No Breach, No Recovery     

            TAR complains in its second issue that
because there was no breach of the agreement, Apex was not entitled to recover
the amount it recovered or because the contract provision at issue in the
agreement was illusory and unenforceable, and the trial court erred in
determining otherwise.  The agreement contained a provision in the “Fee
Schedule” section that: “Regardless of the Fees earned by [Apex] and owed by
[TAR] in (sic) during the first year of this Agreement, [TAR] shall not pay
[Apex] an amount, in total, less than sixty thousand dollars ($60,000).”  We
have already determined that the trial court did not err in finding that there
was a breach of the agreement by TAR.

Illusory Contract

            TAR complains that if the provision
requiring it to pay Apex no less than sixty thousand dollars is interpreted as
being a damage provision in the event of a breach, the agreement thus becomes
illusory and void because it would potentially have allowed Apex to terminate
the agreement on the first day and obligate TAR to pay the sixty thousand
dollars without a breach of the agreement by TAR.  

The agreement is a bilateral contract, which is
one in which there are mutual promises between two parties to the contract,
each being both a promisor and a promisee.  Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 489 (1943); Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.,
281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied); The Colony, Tex. v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 725 (Tex. App.—Fort Worth 2008, pet.
dism’d by agr.).  A bilateral contract must be based upon a valid
consideration, in other words, mutuality of obligation.  Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 409 (Tex. 1997); Frequent Flyer, 281 S.W.3d at
224.  

A contract that lacks mutuality of obligation is
illusory and void and is unenforceable.  Frequent Flyer, 281 S.W.3d at
224; Tex. S. Univ. v. State St. Bank & Trust Co., 212 S.W.3d 893,
914 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  Failing to bind the
promisor who retains the option of discontinuing performance without notice
renders a promise illusory.  Light v. Centel Cellular Co. of Tex., 883 S.W.2d
642, 645 (Tex. 1994).  However, mutuality in each clause of a contract is not
required when consideration is given for the contract as a whole.  Howell
v. Murray Mortgage Co., 890 S.W.2d 78, 87 (Tex. App.—Amarillo 1994, writ
denied).

The test for mutuality is applied and determined
when enforcement is sought, not when the promises are made.  Hutchings,
174 S.W.2d at 489; Cherokee Communications, Inc. v. Skinny’s, Inc., 893
S.W.2d 313, 316 (Tex. App.—Eastland 1994, writ denied).  As the Texas Supreme Court stated in Hutchings: 

Though a contract be void for lack of mutuality at
the time it is made, and while it remains wholly executory, yet, when there has
been even a part performance by the party seeking to enforce the same, and in
such part performance such party has rendered services or incurred expense
contemplated by the parties at the time such contract was made, which confers
even a remote benefit on the other party thereto, such benefit will constitute
an equitable consideration, and render the entire contract valid and
enforceable.

 

Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 489 (Tex. 1943).

We find that regardless of whether the clause was
illusory at the time the agreement was signed as alleged by TAR, the subsequent
performance by both TAR and Apex pursuant to the agreement constituted an
adequate consideration and therefore, the agreement was not illusory at the
time of enforcement.  See Hutchings, 174 S.W.2d at 489; Frequent
Flyer, 281 S.W.3d at 224.  We overrule issue two.

Damages

            TAR also complains in its third issue
that the trial court erred in awarding damages based on the clause in the
agreement which provided that TAR would pay Apex no less than sixty thousand
dollars in the first year of the agreement because that clause is an
unenforceable liquidated damages provision.  Further, TAR argues that because
that clause is invalid, there was no evidence to support the trial court’s
judgment regarding damages.  Apex counters TAR has waived this contention by
failing to plead it as an affirmative defense or matter of avoidance.    

An allegation that a provision in a contract is
void, unenforceable, or unconscionable is a matter in the nature of an
avoidance which must be pled.  See Tex.
R. Civ. P. 94.  Additionally, an assertion that a liquidated damages
provision is a penalty is an affirmative defense that a defendant has the
burden of pleading and proving.  Tex. R.
Civ. P. 94; Urban Television Network Corp. v. Creditor Liquidity
Solutions, L.P., 277 S.W.3d 917, 919 (Tex. App.—Dallas 2009, no pet.). 
Failure to do so waives any objection on appeal.  Tex. R. Civ. P. 90.  TAR filed only a general denial and did
not plead any affirmative defenses or matters in avoidance.  Because this
complaint was not pled for, we find that the trial court did not err in
applying the clause in determining Apex’s damages, and therefore, we do not
reach TAR’s complaint regarding the sufficiency of the evidence disregarding
that clause in the agreement.  We overrule issue three.  

Conclusion

            We find that the agreement was not
ambiguous and the trial court did not err in its interpretation of the
agreement.  The agreement was not oppressive, inequitable, or unreasonable nor
was it an illusory contract.  We find that the complaint regarding the validity
of the provision in the agreement which formed the basis of the trial court’s
calculation of damages was not preserved because it was not pled as a matter in
avoidance or affirmative defense.  We affirm the judgment of the trial court.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Affirmed

Opinion delivered and
filed November 10, 2010

[CV06]









[1] No
party complains of the denial of its causes of action in this appeal.

 





[2]
This appeal was filed by Texas All Risk General Agency, Inc., Kelly Ann Davis,
David Day, and TARGA Investments Corp. jointly; however, the judgment of the
trial court was solely rendered against Texas All Risk General Agency, Inc. 
Therefore, each issue is addressed as that of TAR only.