In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00435-CV**
_____

**AMBROSE CLAYBAR, Appellant**

**V.**

**SAMSON EXPLORATION, LLC, Appellee**

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D-140150-C**

**MEMORANDUM OPINION**

Appellant Ambrose Claybar appeals the trial court's Final Summary Judgment Order, in which the trial court granted the appellee's, Samson Exploration, LLC ("Samson"), motion for summary judgment; denied Claybar's motion for summary judgment; and dismissed Claybar's claims against Samson with prejudice. We affirm the trial court's judgment.

BACKGROUND

Claybar entered into a "Surface Location, Subsurface, Salt Water Disposal, Roadway, and Pipeline Easement" ("the Agreement") with Samson, which permitted Samson to drill wells and conduct oil and gas operations on certain portions of Claybar's property. According to Claybar's petition, the Agreement allowed Samson to install crude oil tanks on approximately six acres of Claybar's property, which is referred to as the Lindsey Bledsoe Plant. According to Claybar, the Lindsey Bledsoe Plant is connected by pipelines to different oil and gas wells, some of which are located on the 15-acre subsurface easement that Claybar granted Samson in the Agreement. The Agreement allowed Samson to contract with Kinder Morgan Treating LP ("Kinder Morgan") to operate and maintain an amine treating plant to remove hydrogen sulfide and carbon dioxide from the natural gas produced from the Lindsey Bledsoe well. According to Claybar, in May 2012, a pump at the amine treating plant failed, causing amine chemicals to spill on Claybar's property.

Claybar filed suit against Samson and Kinder Morgan for the damages to his property caused by the spill. Claybar settled his claims against Kinder Morgan and agreed to release Kinder Morgan from any and all claims. Claybar and Samson entered into a Rule 11 agreement, agreeing to submit their dispute to the trial court on cross-motions for summary judgment and limiting an appeal to the issue of

2

whether the indemnity provision of the Agreement requires Samson to pay Claybar's attorney's fees and costs in pursuing his negligence claims against Kinder Morgan. In the Rule 11 agreement, Samson stipulated that Kinder Morgan's negligence proximately caused the damages to Claybar's property, and Claybar agreed to amend his petition and only retain his breach of contract claim and declaratory judgment action against Samson and to limit his recovery to attorney's fees and costs. In his fourth amended petition, Claybar alleged that Samson breached the Agreement and had a duty to indemnify Claybar for the damage caused by Samson's contractor, Kinder Morgan, and for the attorney's fees and costs that Claybar had incurred in pursuing his claims for Kinder Morgan's negligence. Claybar also sought a declaratory judgment against Samson that the indemnity clause of the Agreement clearly binds Samson to pay Claybar's attorney's fees and costs as a result of Kinder Morgan's negligence.

Claybar and Samson filed cross-motions for summary judgment. In his first amended motion for summary judgment, Claybar maintained that two provisions of the Agreement are relevant to his claims against Samson. According to Claybar, the indemnity provision in the Agreement imposes an obligation on Samson to pay for Claybar's costs and attorney's fees, because the plain language of the Agreement allows Claybar to recover his costs and attorney's fees from Samson to the extent

3

they arise from or are related to the negligence or misconduct of Samson or any of Samson's employees, agents, contractors, or invitees. Claybar argued that Samson contractually agreed to allow a fee recovery without limitation to the nature of the claim, and that the Agreement allows for a fee recovery for both negligence and misconduct by Samson. Concerning the Agreement's release provision, Claybar maintained that he did not release all claims against Samson, including any promise to indemnify, by accepting Samson's payment for the easement rights. According to Claybar, the release provision does not apply to his claims, but to a claim for damage from Samson's "normal operations" under the easement.

In Samson's first amended motion for summary judgment, Samson argued that the Agreement's indemnity provision only serves to indemnify Claybar against claims from third parties, and there has been no third-party claim or demand that would trigger the indemnity provision. Samson also argued that Claybar's claims should be dismissed because Claybar released his claims against Samson in the Agreement. While Samson stipulated that Kinder Morgan's negligence caused Claybar's damages, Samson argued that the Agreement does not entitle Claybar to recover attorney's fees and costs from Samson because an indemnity agreement does not apply to claims between the parties to the agreement.

Prior to ruling on the parties' cross-motions for summary judgment, the trial court issued a letter opinion in which it noted that "'[a] defining characteristic of an indemnity agreement is that it 'does not apply to claims between the parties to the agreement[].'" The trial court stated that "the intent of the parties was to enter into an indemnity agreement that required Samson to indemnify and hold Claybar harmless from any claims made against him as a result of the negligence of the Defendants[,]" and "no one made any claims whatsoever against Claybar as a result of the negligence of [the] Defendants." The trial court acknowledged that Claybar had suffered damages as a result of the negligence of the Defendants, including attorney's fees and costs, and that Claybar sought damages through a negligence cause of action, which does not allow for the recovery of attorney's fees or expert witness fees. In the Final Summary Judgment Order, the trial court granted Samson's first amended motion for summary judgment, denied Claybar's motion for summary judgment, and dismissed Claybar's claims against Samson with prejudice. The trial court ruled that the indemnity provision within the Agreement does not apply to the claims brought by Claybar against Samson and Kinder Morgan in this lawsuit, and the Agreement does not obligate Samson to pay Claybar's attorney's fees and costs. The trial court denied Claybar's motion for reconsideration, and Claybar appealed.

## STANDARD OF REVIEW

We review an order granting summary judgment *de novo*. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). In our *de novo* review, we review the evidence presented in the motion and the response in the light most favorable to the nonmovant, crediting favorable evidence to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The party moving for a traditional motion for summary judgment bears the burden of showing no genuine issue of material fact exists and that he is entitled to judgment as a matter of law on the issues expressly set out in the motion. Tex. R. Civ. P. 166a(c); *Nassar*, 508 S.W.3d at 257. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply Inc.*, 644 S.W.2d 443, 446 (Tex. 1982). When, as is the case here, both sides move for summary judgment and the trial court grants one and denies the other, we review the summary-judgment evidence presented by both sides and determine all of the questions presented. *Fielding*, 289 S.W.3d at 848; *see also BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 301 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

## INTERPRETATION OF THE AGREEMENT

An indemnity agreement is a contractual commitment by one party to protect another or hold it harmless from existing or future loss or liability. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Generally, indemnity agreements do not apply to claims between the parties; rather, they apply to claims made by others who are not parties to the agreement. *See Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 143-44 (Tex. App.—Fort Worth 2010, no pet.) (op. on reh'g); *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 63 (Tex. App.—San Antonio 2005, pet. denied); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 130 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.—Austin 1999, no pet.); *Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App.—Houston [14th Dist.] 1992, no writ.). However, an indemnity agreement can be written so that the parties to the agreement agree to indemnify one another against claims they later assert against each other. *See Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App.—Waco 2004, no pet.). To prove that an indemnity provision applies, the plaintiff must show that a third party has filed a claim against him or that the indemnity agreement contains language indicating that it applies to

7

claims between the parties. *See generally MG Bldg. Materials, Ltd.*, 179 S.W.3d at 63; *Ganske*, 129 S.W.3d at 708; *Coastal Transp. Co.*, 20 S.W.3d at 130.

The interpretation of an unambiguous indemnity agreement is a question of law we review *de novo*. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999); *Crowder v. Scheirman*, 186 S.W.3d 116, 119 (Tex. App.—Houston [1st Dist.] 2005, no pet.). An unambiguous indemnity agreement is strictly construed in favor of the indemnitor. *Webb v. Lawson-Avila Constr., Inc.*, 911 S.W.2d 457, 461 (Tex. App.—San Antonio 1995, writ. dism'd). We strictly construe indemnity agreements under the usual principles of contract interpretation to give effect to the parties' intent as expressed in the agreement. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 952-53 (Tex. 1983); *E.I. DuPont De Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). We must give the terms in the indemnity agreement their plain meaning unless the agreement indicates otherwise. *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 562 (Tex. App—Houston [14th Dist.] 2002, no pet.).

An indemnity agreement is unambiguous if it can be given a definite legal meaning. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The terms of the indemnity agreement are controlling regarding the agreement's scope. *See Crimson Expl., Inc. v. Intermarket Mgmt., LLC*, 341 S.W.3d 432, 443-44 (Tex.

App—Houston [1st Dist.] 2010, no pet.). Once we ascertain the proper scope of the agreement, we must then determine whether indemnification is required under the terms of the agreement. *See Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, *PA,* 334 S.W.3d 217, 219 (Tex. 2011).

ANALYSIS

In one issue on appeal, Claybar contends that the trial court erred by granting summary judgment for Samson and ruling that the Agreement's indemnity provision does not apply to claims between the parties to the Agreement and only serves to indemnify Claybar against claims from third parties. Samson argues that the law in Texas is well settled that an indemnity agreement obligates Samson to protect Claybar against claims brought by third parties and does not apply to claims between the parties to the agreement unless the agreement expressly and specifically states that it applies to the parties. According to Samson, because the indemnity provision here does not expressly state that it applies to the parties to the Agreement, Claybar has no right to indemnity from Samson.

Although Claybar and Samson agree that the Agreement is unambiguous, they seek opposing interpretations of the Agreement's indemnity provision. We address whether the summary-judgment evidence proves as a matter of law that the indemnity provision does not apply to Claybar's claims against Samson, and thus

9

does not obligate Samson to pay Claybar's attorney's fees and costs. The indemnity provision in the Agreement provides as follows:

> [Samson] shall indemnify [Claybar] against any claims, damages, demands, liabilities, and costs (including reasonable attorneys' fees) to the extent arising from or related to the negligence or misconduct of [Samson] or its employees, agents, contractors, or invitees in the course of their exercise of rights granted by this instrument, but not to the extent caused by [Claybar], or its employees, agents, contractors, or invitees.

The plain language of the indemnity provision does not show that the parties intended for Samson to indemnify Claybar for attorney's fees and costs in pursuing claims against Samson and Kinder Morgan for damages to Claybar's property. *See Ganske*, 129 S.W.3d at 708. If Samson and Claybar had intended to include claims between them, they would have had to specifically add such language to the Agreement. *See id.* We hold that there is no specific language in the Agreement that would overcome the general rule that indemnity agreements do not generally apply to claims between the parties to the agreement. *See Adams*, 310 S.W.3d at 143-44; *MG Bldg. Materials, Ltd.*, 179 S.W.3d at 63; *Coastal Transp. Co.*, 20 S.W.3d at 130; *Wallerstein*, 8 S.W.3d at 780; *Derr Const. Co.*, 846 S.W.2d at 858. Because the indemnity provision does not apply to claims between Claybar and Samson, Claybar had to show that a third party had filed a claim against Claybar to prove that the

indemnity provision applied; Claybar has failed to do so. *See MG Bldg. Materials, Ltd.*, 179 S.W.3d at 63; *Coastal Transp. Co.*, 20 S.W.3d at 130.

Under the applicable standard of review, the summary-judgment evidence proves as a matter of law that the indemnity provision does not apply to the claims brought by Claybar and does not obligate Samson to pay Claybar's attorney's fees and costs. *See* Tex. R. Civ. P. 166a(c); *Nassar*, 508 S.W.3d at 257. We overrule Claybar's sole issue on appeal. Having determined that the Agreement's indemnity provision does not apply, we need not consider Claybar's other arguments as they would not result in any greater relief. *See* Tex. R. App. P. 47.1. We affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 16, 2017
Opinion Delivered February 1, 2018

Before McKeithen, C.J., Kreger and Horton, JJ.

11